Melvin A. APEL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15607.

United States Court of Appeals Eighth Circuit.

Aug. 12, 1957.

Alfred A. Beardmore, Charles City, Iowa, for appellant.

Philip C. Lovrien, Asst. U. S. Atty., Sioux City, Iowa (F. E. Van Alstine, U. S. Atty., Sioux City, Iowa, with him on the brief), for appellee.

Before GARDNER, Chief Judge, JOHNSEN, Circuit Judge, and DONOVAN, District Judge.

JOHNSEN, Circuit Judge.

Appellant was convicted by a jury and fined $2500 by the court, for violation of 18 U.S.C. § 1001.

That section provides: "Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statements or entry, shall be fined not more than $10,-000 or imprisoned not more than five years, or both."

The indictment had charged in substance that appellant, in delivering to the Commodity Credit Corporation the corn mortgaged by him under two government price-support loans, for the purpose of satisfying such loans, had included, in his delivery under each loan, corn not covered by the mortgage, and had willfully and knowingly failed to disclose this fact to the agents and officials of the Commodity Credit Corporation, in order that he might receive payment for the excess at the government's settlement value.

The first contention made for reversal is that the evidence was insufficient as a basis for a conviction, and that the court therefore erred in denying appellant's motion for a directed verdict of acquittal. We think that the evidence

legally entitled the question of appellant's guilt to be submitted to the jury, and that it amply sustains the verdict of conviction which the jury returned.

██ On such an appellate contention, we must treat all questions of conflict in the evidence and of credibility among the witnesses as having been resolved by the jury against the appellant and must also accord to the government the benefit of every favorable inference which it is reasonably possible to draw from any relevant facts and circumstances of which there is some substantial proof. Where it thus appears from the record that there exists probative substance on each salient element of the offense, from which reasonable minds could, either directly or inferentially arrive at the conclusions implicit in the jury's verdict of guilt, we cannot be asked to set aside the conviction as being unsustained legally by the evidence. McKenna v. United States, 8 Cir., 232 F.2d 431. See also Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.

Here, as to the two mortgage loans involved, Nos. 1580A and 1653A, the record contains direct evidence that corn had been sealed under the first loan in the pledged amount of 2568 bushels and under the second in the pledged amount of 564 bushels, but that appellant, in satisfying the loans through delivery of the corn, had made delivery under the first loan of 3333.21 bushels and under the second of 963.57 bushels—excesses respectively of 765.21 bushels (almost 30%) and of 399.57 bushels (almost 71%). The elevator man, to whom delivery was made as Commodity Credit's agent, testified that he had received and credited the corn in accordance with the indication or statement made by appellant as to the seal or loan number to which each delivery was applicable.

There further was direct evidence entitling the jury to believe that the government sealer had correctly measured the dimensions of the cribs on the making of the loans, and that the deductions made by him in cubic content, for the factors of husks, ventilators, ties and bracing, was of such substantial accuracy, in relation to the particular corn, as to leave no room for reasonable likelihood that the amount of the excess delivered had in the case of either loan come from the sealed crib. Beyond the testimony of the sealer, it was shown, without objection, through the County Agricultural Stabilization and Conservation Office Manager, that his experience in the receiving of corn under such loans generally had demonstrated that the formula and rules used in arriving at the quantity of corn in a crib for sealing purposes were productive of practicably accurate results, and that, "when corn is shelled and delivered, the number of bushels delivered is usually very close to the number of bushels measured and sealed".

In this connection, it incidentally may be noted that, in the case of a third corn loan (not involved in the indictment charge), which appellant concurrently had and about which he introduced evidence for other purposes, there had been a variance, on his delivery of the corn, according to the government's records, of only 41 bushels from the computed quantity of 1161 bushels sealed, or a difference of less than 3½%.

Again, on appellant's attempt to prove that the cribs under the two loans involved had capacities greater, and so should be regarded as in fact having contained more, than the amounts of corn for which they were sealed, one of his witnesses testified to a capacity of 679 bushels for the crib which had been sealed for 564 bushels, if no deduction was made for studdings, ties and braces—but this asserted maximum capacity of 679 bushels, with no deduction for structural incidents or quantity of husks existing on the specific corn, still fell 40% short of being able to hold the 963.57 bushels which the government's elevator man testified that appellant had delivered as purportedly having come from the particular crib.

Furthermore, the government's evidence showed a number of other circumstances, which the jury could view as

having a collateral or corroborative significance, in its appraisal of whether appellant had in fact included other corn in his deliveries under the two loans involved and had knowingly and willfully failed to disclose this fact, or whether, as he claimed, he was simply an innocent victim of circumstances, from improper computations having been made by the government's agent of the quantities of corn which were being sealed, and from erroneous crediting having been engaged in by the elevator man, in the case of loan No. 1653A, of some of the corn that belonged to the uninvolved third loan referred to above, of which he was at the same time making delivery.

One of these circumstances was that the deliveries, which the government claimed that appellant had indicated were being made under the two loans involved, included a substantial quantity of corn that was below sealable grade, and that the quantity of such low-grade corn was more than equal to the excess amount of corn which the government claimed existed in the loan deliveries. It also was shown that appellant had a crib of low-grade corn, adjacent to the crib under loan No. 1653A, on which his application for a loan had been rejected, at the time the two loans here involved were made, because of the unsealable grade of the corn, but which crib he had engaged in shelling about the same time as the corn under loan No. 1653A. And relatedly, it was additionally shown that on one occasion when the government's agent had gone out to make a routine check of the status of the sealed cribs during the loan period, he found appellant's hired men removing corn from the crib under loan No. 1653A, for which act appellant made the explanation that he had forgotten that it was this crib, and thought it was the adjacent crib (of low-grade corn), which was under seal.

Enough has been said to indicate, we think, that the trial court was not required to direct the jury to acquit appellant as a matter of law, on his claim of error on the part of the government's sealer in measuring the cribs and computing their corn contents and of mistake or misunderstanding on the part of the government's elevator man in having credited an excess of 399.57 bushels to loan No. 1653A instead of to the third loan that he had (as to which he was under no indictment curb), and in relation to the testimony which he produced as to his good character. We do not deem it necessary, in demonstrating that the verdict rested on substantial evidence, to set out the details of appellant's evidence, which the jury apparently did not accept. His personal testimony, that he had told the elevator man that the 399.57 bushels referred to were being delivered and should be credited under his third loan, instead of on loan No. 1653A, gave rise merely to a conflict with that of the elevator man and a resulting question of credibility, which it was for the jury to resolve.

Also, in its determination of the matter of appellant's guilt generally involving his knowledge and willfulness, the jury was at liberty to find significance in the facts (1) that the explanation attempted to be made by him of the 30% excess of corn which admittedly was delivered by him under loan No. 1580A was simply that the crib had a greater capacity than the quantity of corn for which it was sealed and so necessarily involved a mistake, and (2) that a shifting by the jury of the excess of 399.57 bushels from loan No. 1653A to the third loan would mean that appellant, a large-scale farmer, with previous experience in price-support loans, had, without protest, allowed the government to take a sealing margin of 30% on both of these loans. Beyond this, the jury might further note that unsealable corn had been delivered by appellant, not merely in an amount which would cover the total of the excesses existing under the loans as made, but which would also cover the substantial quantity of corn (one-third of the crib) which the government's agent testified had been removed from the crib under loan No. 1653A, at the time of the chance

inspection made by him, which has been referred to above.

■ Appellant's next contention is that it was error for the court to have given instruction No. 11. That instruction told the jury that it was not at liberty to convict appellant, unless the government had proved beyond a reasonable doubt (1) that corn had been included in the deliveries made by appellant under the two loans involved, which was not described in the mortgages covering them, and (2) that appellant had "wilfully concealed and covered up from the Commodity Credit Corporation that he was delivering corn which was not described in those mortgages".

The attack made upon this instruction is that it did not state to the jury appellant's theory of defense, and further that its legal effect was to preclude the jury from considering his attempted explanation, that the elevator man had erroneously credited corn to loan No. 1653A which belonged to appellant's third loan.

We are unable to see any basis for the argument that the instruction foreclosed the jury from giving consideration to and weighing appellant's contention of erroneous crediting, which we believe the jury naturally would engage in doing in its resolution of the facts, and which we think it reasonable to assume that counsel for appellant had duly attempted to impress upon it in his argument.

As to appellant's right to have had the court specifically call to the jury's attention his theory of defense somewhere in the instructions, it is to be noted that he made no tender to the court of any instruction which he desired to have given. In his exceptions to the court's charge, as appearing in the record prepared by him, he "objected to the giving of Instruction No. 11 for the reason that it was not a balanced instruction in that it failed to set forth Defendant's defense * * * ". But the instruction did not purport to be a review or summary by the court of the evidence in the case. It was a statement merely of the two legal elements necessary to be found to exist, beyond a reasonable doubt, from the jury's examination of the probative aspects of the case, before there could be any right to convict.

■ Appellant would, of course, have been entitled to have an instruction given, somewhere in the charge, on his theory of defense (greater crib capacity and erroneous crediting), had he tendered such an instruction, appropriate in form and substance. As our previous decisions have declared, the general rule is, both in civil and criminal cases, that, "as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made". Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55, 61. See also United States v. Indian Trailer Corp., 7 Cir., 226 F.2d 595, 598.

■ But, except in cases where the sensitive defense of insanity is involved (see Holloway v. United States, 80 U.S. App.D.C. 3, 148 F.2d 665; Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612), or where the trial situation has been one of such complexity or confusion as to persuade of probability that, without some statement by the court, the jury will not be able intelligently to comprehend or keep in mind the significant evidential questions involved (see Chicago & N. W. Ry. Co. v. Green, supra, 164 F.2d at page 61), the defendant in a criminal case will not ordinarily be heard to complain of the trial court's failure to set out in its charge his specific theory or theories of defense, unless he has himself formulated them into a proper and tendered instruction.

■ The evidence of a defendant in a criminal case is not subject to the limitation of required pleading and definitive issue, and in the effort made to create doubt generally on such a trial there often is no desire to have the case pinned down to a definite theory before the jury. On this practical basis, as well as for reasons of orderly procedure,

the trial court ordinarily is entitled to have a defendant advise, by a tender of instructions, of whatever specific theory or theories, if any, he may finally choose to rely upon and wish to have pointed out to the jury.

■ Here, the situation clearly was not one of such complexity or probable confusion as to make it necessary for the court, in the interest of justice, and without a tendered instruction, to point out specifically such theory or theories of defense as the court deemed capable of existing on the evidence, in order to insure understanding on the part of the jury. We do not feel that the jury could have failed, from the evidence and argument, to understand appellant's theories and contentions. Nor was the court's general charge such in its form or substance as could be said in any way to have left appellant's theory or theories impliedly deprecated or disparaged by the failure to make mention of them.

■ Appellant's third contention is that it was prejudicial for the court to have given a supplemental instruction, which the jury requested during the course of its deliberation. The supplemental instruction consisted merely of an answer made by the court to a question from the jury as to what the evidence had been regarding a particular incident or circumstance. The court simply advised the jury that a check of the record by the court reporter showed that there had been no testimony on the point about which the jury inquired.

The question which the jury asked was in substance whether the evidence showed that appellant had entered into any plan of settlement or restitution with the county chairman of Commodity Credit at the time that the hired men of appellant were found by the government inspector to have been removing corn from the crib under loan No. 1653A. Appellant objected to the answer made by the court to the jury's question, on the ground that it "indicated to the jury that there was something wrong because no restitution was made". Further, ap-

pellant requested that the court expressly point out to the jury the loan settlement sheet, which had been used in relation to the delivery of the corn, and instruct the jury that on the basis thereof "the corn which had been removed by mistake was fully settled for".

It will be noted that the court's answer to the jury contained no statement or implication on whether appellant had or had not entered into a plan of settlement or restitution at the time as to which the jury inquired. The effect of the answer was simply to tell the jury that there was no testimony one way or the other upon the matter. It cannot be argued that this was an indication on the part of the court to the jury that appellant had made no settlement or restitution at the time and "that there was something wrong because no restitution was made". Also, it may be noted that the court's charge precedingly had impressed upon the jury that it was required to rely for its verdict solely "upon the evidence produced and all reasonable and proper deductions therefrom".

■ A trial court is not required to speculate upon what a jury's purpose may be in making inquiry during its deliberation as to the existence, or in requesting a reading, of some particular piece of evidence, and the court, if it chooses to make reply, ordinarily has the right to answer the inquiry or grant the request within the specific limits of the jury's question. Cf. United States v. Rosenberg, 2 Cir., 195 F.2d 583, 598–599. Equally, we cannot here be asked to speculate upon whether the jury may have used the irrelevant question of settlement or restitution in relation to the improper corn-removal referred to, as a ground for convicting appellant. As a matter of fact, it would be no more speculative to assume that the jury's purpose may have been related to the consideration of what remaining quantity of corn appellant had an obligation for delivery and the amount of the excess which had thus been involved, as such a difference in delivered excess might perhaps seem to have some significance

on whether the situation was one of mistake or of attempt to take advantage. But neither of these speculations has any place in this review, for the jury's purpose in asking the question, where no indication was made on its part, would ordinarily be no more subject to our scrutiny than are its other general deliberative processes.

The final contention urged is that the trial court was guilty of clear abuse of discretion in making denial of appellant's motion for a new trial based upon alleged newly discovered evidence.

The alleged new evidence consisted of a showing from the records of the elevator that the loads of corn apparently had not been entered on the books at the time of their delivery but at a later date, in that some loads for which weigh tickets had been issued on a certain date appeared listed on the books below loads for which weigh tickets had been issued on a subsequent date. The probative significance of this fact was claimed to be that it demonstrated that the elevator man had testified incorrectly when he stated that he had entered the loads in the elevator books on the dates of their delivery, and that it impugned the force of his further testimony that he had credited the loads to the loans as indicated by appellant, in that it suggested that he had deferred making entries of the loads until he was in a position to credit all of the low-grade corn under appellant's third loan and loan No. 1653A to the latter loan, and all of the good corn under the two loans to the third loan. Appellant argues that this was such a substantiation of his own explanation of what had happened as would in reasonable likelihood have prompted the jury to accept his story and so have produced a different trial result.

We do not believe that the trial court was obliged to view the alleged newly discovered evidence with any such compelling significance or that the court can be said otherwise to have abused its discretion in refusing to grant appellant a new trial. Assuming that the sequence of the loads in relation to the weigh tickets issued demonstrated that the elevator man's testimony was incorrect as to his having entered the deliveries on the elevator books on the dates of their receipt, this would do no more than add an element of argument to appellant's contention that the elevator man had withheld making entries in his books until he would be able to credit all of the good corn to the third loan and all of the poor corn to loan No. 1653A. No motive for any such misconduct on the part of the elevator man is suggested. Nor is such conduct in line with what he had done in relation to loan No. 1580A, as to which appellant admits that both the good corn and the poor corn delivered by him under that loan were properly credited in accordance with his indication on delivery.

Again, since the entries made in the elevator books set out the grade of corn in each load, from the sampling and testing engaged in after the weigh tickets were issued, the trial court might reasonably conclude, in its evaluation of the significance and force of appellant's showing, that the fact probably was, and that a jury would be likely to believe, that the entering of the weigh tickets on the elevator books was withheld, contrary to the elevator man's recollection but not as a matter of false testimony on his part, until return of the result of the sampling and testing for the load had been received and could at the same time be made to appear in the entry.

Besides, appellant's theory and showing on his motion afford no more basis than did the evidence on the trial for a shifting of the excess (whether it consisted of good or poor corn) from loan No. 1653A to the third loan. The jury by its verdict had rejected appellant's contention that the excess claimed by the government to have been delivered under loan No. 1653A had come from and should have been credited to the third loan. It apparently believed the government's theory that the excess came from the adjacent crib of unsealable corn. Unless the court was persuaded that the elevator man had been guilty of perjury,

and not of mistake, in his testimony as to the time that entry was made of the weigh tickets upon the elevator books, it was not required, as against the other determinations implicit in the jury's verdict of guilt, to regard that element of such controlling significance as in the interest of justice to demand a new trial.

Also, beyond this, the court could properly regard the alleged new evidence as not having been discovered with necessary diligence, in that appellant had at all times had copies of the weigh tickets in his possession and could at any time have asked leave to check the elevator records in relation to them, if there could be any corroborative significance for his theory of mistaken delivery creditings, from the sequence in which the weigh tickets were entered on the elevator books. Or he could have demanded the presence of the books at the trial.

Orderly administration of criminal justice dictates that, on motion for new trial for newly discovered evidence, evaluation of the showing made, both as to its facts and their significance, should controllingly be left to the District Court and that a Court of Appeals must not engage in a de novo appraisal, but should accept the judgment of the District Court, "except for most extraordinary circumstances". United States v. Johnson, 327 U.S. 106, 111, 66 S.Ct. 464, 466, 90 L.Ed. 562. Unless the conviction obtained rests on erroneous or constitutionally violative process, or unless there is an inescapable persuasion that an inherent miscarriage of justice probably has occurred, it is not the general business of a Court of Appeals to concern itself with the question of new trials. And so, on an alleged claim of abuse of discretion by the trial court in denying a motion for a new trial on newly discovered evidence, our only interest is in whether the showing made, in its relationship to the evidence of the proceedings of the trial, is such as should compel judicial belief on the part of a trial court that it would in reasonable likelihood have given rise at the trial to a different result, and if so, whether

the appellant has also satisfied the requirement of necessary diligence in respect to it. See Nilva v. United States, 8 Cir., 212 F.2d 115, 124.

Affirmed.