**UNITED STATES of America,**
**Appellee,**

**v.**

**Ronald LEACH, Defendant, Appellant,**

**UNITED STATES of America,**
**Appellee,**

**v.**

**Jerome TREMONT, Defendant, Appellant.**

**Nos. 7532, 7533.**

United States Court of Appeals,
First Circuit.

June 15, 1970.

See also 1 Cir., 429 F.2d 1166.

Bernard A. Dwork, Boston, Mass., with whom Enid M. Starr and Dwork & Goodman, Boston, Mass., were on brief, for Ronald Leach, appellant.

James D. St. Clair, Boston, Mass., with whom William E. Bailey and Hale & Dorr, Boston, Mass., were on brief, for Jerome Tremont, appellant.

Joseph A. Lena, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendants Tremont and Leach were found guilty of three counts of an indictment charging violations of 18 U.S.C. § 1010 [1] by making false statements in an application for a Title I home improvement loan. The charges arose out of a $3,000 loan obtained from the Lynn Safe Deposit and Trust Company in May 1968, purportedly to improve a building the defendants were in the process of buying. Count I charged them with stating in the loan application that the proceeds would be used to improve the property, knowing such representation to be false. Count II charged the making of a false statement by omitting to list an outstanding indebtedness on the FHA credit application as required by law. Count III charged that the defendants, with "divers other persons unknown," had conspired to make false statement for the purposes described as illegal in § 1010.

Defendants first contend that there is a fatal variance between the offense charged in count II and the evidence offered by the government. This count charged that in making out the loan application, defendants failed to list a debt owed to Empire Homes, Inc. "to be secured by mortgage," on premises at 13 Pickman St., Salem, Massachusetts.[2] At the time the application was made, defendant Tremont had signed a purchase and sale agreement with Empire Homes to buy the Pickman St. property, in which he promised to assume the first mortgage and to take out a second mortgage. Defendants argue that the proof showed that the second mortgagee was one Temkin, not Empire Homes, and that the variance is significant because it confused the witnesses and required the listing of a mortgage indebtedness before the mortgage had come into existence.

■ This argument is singularly without merit because the debt which the government claims was omitted was not the mortgage but the obligation evidenced by the purchase and sale agreement. The government stated this explicitly in its answer to defendant's motion for a bill of particulars. The FHA form requires not only that mortgages but all "fixed obligations" be listed.

Defendants' next contention, going to the conspiracy count, is that the trial court committed reversible error in denying, in part, their request for a bill of particulars. Count III charged that pursuant to the conspiracy to falsify the application, defendants had committed "the following and other overt acts." Six acts were spelled out in the indictment. Defendants claim they were prej-

<hr />

1. "§ 1010. *Federal Housing Administration transactions.*

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instru-

ment, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both. (June 25, 1948, ch. 645, 62 Stat. 751.)" This statute was amended as of May 25, 1967. Pub.L. 90–19, § 24(c), 81 Stat. 28 transferring the functions and powers previously vested in The Housing and Home Finance Agency to the Department of Housing and Urban Development.

2. The purchase price was $14,000. The financing was to be accomplished by assuming one mortgage for $11,200 and obtaining a second mortgage for approximately $2,000. On the FHA application the amount "$14,000" was written in as the purchase price but not as a debt.

udiced by the denial of their motion to require the government to specify the alleged false statements, the name of the defendant making each statement and, most importantly, the "other overt acts."

■ The function of a bill of particulars is to protect against jeopardy, provide the accused with sufficient detail of the charges against him where necessary to the preparation of his defense and to avoid prejudicial surprise at trial. United States v. Tanner, 279 F.Supp. 457, 473–474 (N.D.Ill.1967); United States v. Smith, 16 F.R.D. 372, 374–375 (W.D.Mo.1954); 8 J. Moore, Federal Practice § 7.06 [1] (1969). Although the 1966 amendment to Fed.R. Crim.P. 7(f) was intended to liberalize discovery, Walsh v. United States, 371 F.2d 436 (1st Cir.), cert. denied, 387 U. S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967), the power to grant or deny particulars is still entrusted to the sound discretion of the trial court. It has long been established that actual prejudice to the defendant must be shown to justify reversal. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545 (1927); 1 C. Wright, Federal Practice and Procedure § 130, at 295 (1969).

Defendants claim they were prejudiced by the testimony of Kenneth Smith, the bank's former loan officer, and the prosecution's chief witness. They claim they had no way of knowing that the government would attempt to show that Smith was part of an ongoing conspiracy tying them into an illegal transaction. In particular, defendants claim they were prejudiced because they were unable to lay a foundation for an attack on Smith's mental capacity.[3]

■ From our examination of the record we are satisfied that the defendants were not prejudiced by the court's denial of the particulars. First of all, they were well informed by the indictment as to the nature of the charges, the name of the bank, the property involved,

pertinent dates and six overt acts. The fact that Smith was a key figure in the transaction and not a secret informer should have alerted the defendants to the likelihood of his being called to testify. It seems to us that normal investigation would have disclosed the further information they required. See *Walsh, supra,* 371 F.2d at 437. Furthermore, counsel for both defendants subjected Smith to rigorous cross examination. In the course of the questioning, they brought out inconsistencies in his testimony and elicited the information that he had a criminal record and that there was then pending a motion for reduction of sentence in two similar cases.

Although it would have been better practice for the court to have granted the motion, *see* United States v. Covelli, 210 F.Supp. 589, 590 (N.D.Ill.1962), we do not find that the defendants were prejudiced by its failure to do so. United States v. Cudia, 346 F.2d 227, 228 (7th Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 428, 15 L.Ed.2d 359 (1965). Indeed, our language in Nesson v. United States, 388 F.2d 603, 604 (1st Cir.), cert. denied, 391 U.S. 920, 88 S.Ct. 1807, 20 L.Ed.2d 657 (1968), seems particularly appropriate here:

> "While it would have been better for the government to have disclosed certain record information which might have aided the defendant in his defense, it seems reasonably apparent from an examination of the transcript that the defendant did not avail himself of what information he did have, and was not as surprised as he claims on this appeal."

Defendants also contend that there is a fatal variance between the allegations in count III and the government's proof, in that a conspiracy was charged with "divers unknown persons" at a time when Smith's involvement was known to the government. Aside from the fact that they failed to object and thus did

---

3. At the time the loan was granted the FBI were already conducting an investigation and were in the bank. Defendants sought to show that Smith's granting an illegal loan under these circumstances, was not the working of a rational mind.

not preserve their rights, this contention seems to be based on a mistaken impression that Smith had testified before the grand jury. Their acknowledgment on oral argument that Smith had not so testified makes further discussion of this point unnecessary.

■■■ Defendants also appeal from the denial of their motions for judgment of acquittal and for new trial. In reviewing the denial of a motion for judgment of acquittal, the pertinent question is whether the trial court had reason to believe that there was sufficient evidence on which reasonable persons could find guilt beyond a reasonable doubt. Parker v. United States, 378 F.2d 641 (1st Cir.), cert. denied, Perma-Home Corporation v. United States, 389 U.S. 842, 88 S.Ct. 81, 19 L.Ed.2d 107 (1967); Crawford v. United States, 126 U.S. App.D.C. 156, 375 F.2d 332, 334 (1967). When we apply this test, and view the evidence must favorably to the government, we conclude that the court below did not err in sending the case to the jury.

■■■ Motions for new trial are directed to the trial court's discretion. Under its broad power, the court may weigh the evidence and consider the credibility of the witnesses. The remedy is sparingly used, the courts usually couching their decisions in terms of "exceptional cases," United States v. Pepe, 209 F.Supp. 592, 595 (D.Del.1962), affirmed, 339 F.2d 264 (3rd Cir. 1964), "miscarriage of justice," United States v. Parelius, 83 F.Supp. 617, 618 (D. Haw.1949), and where "the evidence preponderates heavily against the verdict," United States v. Robinson, 71 F. Supp. 9, 10–11 (D.D.C.1947). Rule 33 itself provides that the court may grant a new trial where required "in the interest of justice." Applying these standards, we reject the defendants' contentions. Smith testified unequivocally that the defendants wanted to use the money to buy into a business,[4] and that they talked about a job for him. There was also testimony that a portion of the loan money was used to cover an overdrawn checking account. If the jury chose to credit this testimony regarding the purpose of the loan, it was sufficient to sustain the conviction under count I.

■■■ As to count II, defendants contend that the government failed to meet its burden of proving that the omission in the FHA form was done with the requisite intent. The offense set forth in § 1010 requires proof of three elements: the making of a false statement in the application, knowing it to be false, for the purpose of obtaining a loan from the lending institution and influencing the FHA. United States v. Pesano, 293 F.2d 229, 231 (D.C.Cir. 1961). The ingredient of intent must be found in the facts and the surrounding circumstances. Pesano, supra. Defendant Leach testified that the reason he left blank the indebtedness portion of the FHA form was that with two mortgages on the property his payments would exceed the rental income and he hoped to consolidate them. Thus the omission was not accidental. When he signed the certification clause that all statements were true he knew that not to be the case. Moreover, count II of the indictment was for failing to disclose his indebtedness, not for failing to list future mortgages. Leach was sufficiently experienced in business affairs (he described himself as a "business broker and consultant") to know that the FHA would have a substantial and legitimate interest in knowing that he had to finance the purchase of the property, whatever his plans to consolidate

---

4. Defendants say that the only testimony to this effect came not from Smith but from the court. After sustaining an objection to a question put by counsel, the court addressed the witness: "They said they wanted the loan to buy into a business, if I understand," to which Smith replied, "Right, yes, sir." Although this was a leading question, we cannot agree that it was testimony by the court. At any rate, immediately thereafter, Smith testified fully on the subject, to which no objection was taken.

the mortgages. The jury could find that he deliberately omitted what he knew to be important information so as not to alert the FHA to the true state of affairs. We think the evidence was also sufficient to sustain Tremont's conviction on this count. From the evidence that Tremont had signed the purchase and sale agreement which recited this indebtedness, had put Leach in contact with Smith and was present at the bank when Leach signed the FHA application, the jury could reasonably find that he had the requisite statutory intent.

Defendants point to the fact that even though the indebtedness did not appear on the FHA application, it was entered by Smith on the bank's own form and placed in the bank's loan folder.[5] They point out also that Smith contradicted himself, testifying first that he may have been told of the debt but failed to write it on the FHA application; and later denying that he had ever been told of the existence of a second mortgage. But whether Smith knew of the indebtedness and whether the information found its way into the hands of the FHA cannot change the result here. For the reasons given above, there was sufficient evidence on which the jury could base its decision regarding the defendant's intentions on the day the application was filled out, and we are not convinced that its decision must be overturned in the interest of justice. Fed. R.Crim.P. 33.

Finally, defendants make numerous allegations of error respecting the failure of the trial court to give requested instructions. These allegations fall into three groups: instructions regarding accomplice testimony; those relative to the charge of making wilful and knowing false statements; and those on conspiracy. As to the first and third groups, defendants candidly admit that the instructions as given were proper, but claim that their rights would have been more adequately protected if their requests had been allowed. We regard these allegations of error to be lacking in substance. Taken as a whole, the charge was fair and impartial. *See* Devine v. United States, 403 F.2d 93, 96 (10th Cir. 1968), cert. denied, 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969); Harris v. United States, 367 F. 2d 633, 636 (1st Cir. 1966), cert. denied, 386 U.S. 915, 87 S.Ct. 862, 17 L.Ed.2d 787 (1967).

Defendants also complain that they were prejudiced by the court's refusal to instruct the jury on the theory of their defense. It is reversible error for the court to refuse a request to instruct as to defendant's theory of the case if there is evidence to support it. Belton v. United States, 127 U.S.App.D. C. 201, 382 F.2d 150 (1967); Strauss v. United States, 376 F.2d 416, 419 (5th Cir. 1967); United States v. Blane, 375 F.2d 249, 252 (6th Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 41, 19 L.Ed.2d 96 (1967); Beck v. United States, 305 F.2d 595 (10th Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 186 (1962); Marson v. United States, 203 F.2d 904, 912 (6th Cir. 1953); Calderon v. United States, 279 F. 556, 558 (5th Cir. 1922). 8 J. Moore, Federal Practice § 30.06, at 30–4, 30–14 (2nd ed. 1969); 2 C. Wright, Federal Practice and Procedure § 482, at 278–279 (1969).

The rule is equally applicable to situations where special facts present an evidentiary theory which if believed would defeat the factual theory of the prosecution. Salley v. United States, 113 U.S. App.D.C. 207, 353 F.2d 897, 898 (1965); *Devine, supra.* However, the defendant must tender an instruction that is appropriate in form and substance. Apel v. United States, 247 F.2d 277, 282 (8th Cir. 1957). Where he fails to accomplish this, the court is not obligated to give an instruction unless a particularly sensitive defense is involved, Tatum v.

---

5. Smith testified that the bank's form is not sent to the FHA, but that certain information is copied from it onto another document which is then sent to the government.

United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951), or the facts adduced at trial are so complex and confusing that an understanding of the issues would be beyond the grasp of the jury. *Apel, supra*; *see* Heerman v. Burke, 266 F.2d 935, 940 (8th Cir. 1959); Chicago, N. W. Ry. Co. v. Green, 164 F.2d 55, 61 (8th Cir. 1947); Pflotzer v. Aqua Systems, Inc., 162 F.2d 779, 783 (2nd Cir. 1947); E. I. Dupont de Nemours & Co. v. Frenchette, 161 F.2d 318, 322 (8th Cir. 1947); Feldmann v. Connecticut Mutual Life Ins. Co., 142 F.2d 628, 631 (8th Cir. 1944). By the same token, defendants who are denied their requests must protect their rights as required by Fed.R. Crim.P. 30, except to the extent that a reviewing court may find that the denial constitutes plain error. McMurray v. United States, 298 F.2d 619 (10th Cir. 1961), cert. denied, Bryson v. United States, 369 U.S. 860, 82 S.Ct. 950, 8 L. Ed.2d 18 (1962); Herzog v. United States, 235 F.2d 664 (9th Cir. 1956); 8A J. Moore, Federal Practice § 52.03 [2], at 52–13 (2nd ed. 1969).

Turning to the case at hand, defendants' theory with respect to count I was that at the time they negotiated the loan they intended to make home improvements, but had to postpone their plans because of the failing health of some of the tenants and financial considerations. As to count II, defendant Leach testified that he wanted time in which to attempt a consolidation of the mortgages on the property and, acting on Smith's advice, left the debt portion of the application blank.

■ The defendants did not request the court to instruct the jury as to their theory on count I. As to count II, certain requests were made but not preserved.[6] Only defendant Leach's request #12, set forth in the margin,[7] is properly before us. In our opinion the court did not err in refusing to give this instruction because it is an incomplete and therefore incorrect statement of the law. See Apel v. United States, supra, 247 F.2d at 282; Lash v. United States, 221 F.2d 237 (1st Cir.), cert. denied, 350 U.S. 826, 76 S.Ct. 55, 100 L.Ed. 738 (1955). This requested instruction does not allow for the possibility that Smith was an accomplice or that even though Leach left the "responsibility" for completion of the form up to Smith, he fully intended to violate the law. A court is under no compulsion to accept faulty instructions.

Although we are fully cognizant of the importance of theory instructions, we think the primary responsibility must rest with counsel to make full and fair requests to charge. On the facts of this case the jury was sufficiently apprised by the court's instructions on intent and accomplice testimony to judge the conflicting evidence and make its determination as to the guilt or innocence of the defendants.

Affirmed.

---

6. After the charge was given, the court invited counsel to make their objections. At the close of his own objections, counsel for defendant Tremont said he would also adopt those to be made by the co-defendant. Although defendant Leach preserved his rights as to instruction # 12, defendant Tremont had never included a like instruction in his own requests.

Even though Leach's instruction # 11 and Tremont's # 9 go to their theory of defense to count II, neither defendant made an objection after the charge. *See* Dunn v. St. Louis-San Francisco Ry., 370 F.2d 681 (10th Cir. 1966). Although in a proper case, Fed.R.Crim.P. 52(b) would allow the court to act, there is no plain error here.

We have considered all the other requested instructions which the defendants say were erroneously denied, and find them lacking in merit.

7. "12. The Defendant Leach is not responsible for any misrepresentations based upon the application by the bank official and if he left the responsibility to the bank official to answer item # 8 of the credit application, then he cannot be found guilty under Count II."