**UNITED STATES of America, Plaintiff,**

**v.**

**James A. FISHER, III, Defendant.**

**Crim. A. No. 4:CR–91–095–01.**

United States District Court,
M.D. Pennsylvania.

Dec. 4, 1992.

Frederick E. Martin, Asst. U.S. Atty., Lewisburg, PA, for U.S.

James A. Zurick, Zurick & Greco, Shamokin, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Defendant James A. Fisher, III was convicted on three counts of violating 18 U.S.C. § 875(c),[1] which makes it unlawful to threaten to kidnap or injure any person by a communication transmitted in interstate commerce. Fisher was found guilty of mailing threatening letters to the Honorable John C. Shabazz and the Honorable Barbara Crabb, both of the United States District Court for the Western District of Wisconsin, and the Honorable William Enright, of the United States District Court for the Southern District of California.

Following a competency hearing conducted May 22, 1992,[2] defendant was found competent to stand trial. 18 U.S.C. § 4241. At trial, Fisher defended the charges against him by contending that he should be found not guilty by reason of insanity. It was his contention that he suffers from a mental disorder known as organic personality syndrome. Dr. Abram Hostetter testified on defendant's behalf at trial and stated that in his opinion, defendant suffers from that disorder.

The government countered Dr. Hostetter's testimony with that of Dr. Rushton A. Backer and Dr. Thomas Owens. Dr. Backer and Dr. Owens each testified that in his opinion defendant suffers from borderline

---

1. Section 875(c) provides:

   *Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined* not more than $1,000 or imprisoned not more than five years, or both.

   18 U.S.C. § 875(c) (1992 Supp.).

2. N.T., May 22, 1992 (Record Document No. 55).

personality disorder, a disorder which does not impair his judgment to the degree that he is incapable of acting purposefully and of understanding the consequences of his actions. They disagreed with Dr. Hostetter's diagnosis, stating that a necessary element in making such a diagnosis, i.e. evidence of organic brain damage, was lacking.

The jury rejected the defense of not guilty by reason of insanity and returned a guilty verdict on all three counts of the indictment on June 10, 1992. Before the court is defendant's motion (Record Document No. 52) for a new trial filed June 16, 1992. Fed.R.Crim.P. 33. Defendant argues that a new trial is warranted on the basis of the following: (1) a reference by Dr. Backer during direct examination to defendant's prior prosecutions under 18 U.S.C. § 875(c); (2) the court's refusal to grant a continuance so that medical tests could be conducted to buttress Dr. Hostetter's diagnosis and to rebut the government's contention that Fisher suffers from borderline personality disorder; (3) the court's denial of defendant's motion in limine seeking to preclude the government from referring to the absence of physical evidence supporting Dr. Hostetter's diagnosis; and (4) the court's refusal to instruct the jury that a hearing would be held to determine the defendant's fate if it returned a verdict of not guilty by reason of insanity. For the reasons discussed below, we find that none of the grounds raised constitutes reversible, prejudicial error, and will, therefore, deny defendant's motion for a new trial and schedule defendant for sentencing.

## DISCUSSION

### Standard for grant of new trial

"The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed.

R.Crim.P. 33. The decision to grant a new trial is within the sound discretion of the trial judge. Although it is a remedy sparingly granted and should be used only if its denial would result in a "miscarriage of justice", *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir.), *cert. denied sub nom., Tremont v. United States*, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970), a new trial is mandated if there is a reasonable probability that error in the proceedings had a substantial impact on the outcome of the trial. " '[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Government of Virgin Islands v. Bedford*, 671 F.2d 758, 762 (3d Cir.1982), quoting *Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973) and *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). The question which the court must determine is " 'whether the error itself had substantial influence [on the minds of the jury.]' " *Id.*, quoting *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir.1976) and *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). "Unless 'there is a reasonable possibility that [the error] contributed to the conviction, reversal is not required.' " *Id.*, quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972).

### Reference to prior criminal acts

■ Defendant argues that Dr. Backer's reference to prior offenses is a violation of Fed.R.Evid. 404(b) [3] and requires that he be granted a new trial. In response to a question from the United States Attorney, which asked him to express his opinion as to whether one of the letters written by the defendant "contained a realistic attempt at extortion" and achieved "Mr. Fisher's expressed goals", Dr. Backer responded:

**3.** Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or acci-

dent, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

You mean did the letters achieve the goals? If I understand your question correctly, he—I'm not sure if I'm allowed to go into this part. He wrote letters before, He has been prosecuted for that, he has received—

N.T., June 9, 1992 at p. 103.

At that point, defendant moved for a mistrial. The court denied the motion, but instructed the jury "to completely disregard the last answer of the witness. It does not bear in this case."

We find that defendant was not prejudiced by the reference. The reference was non-specific. No details were recounted. The jury heard no information about the nature of the prior letters, to whom they were addressed, what they stated, the nature of the threats they contained, if any, etc. Given the non-specific nature of the reference and the fact that the court immediately instructed the jury to disregard it, it is difficult to see any prejudice flowing from it. See generally: *United States v. Tyler*, 878 F.2d 753, 761 (3d Cir.1989), *cert. denied*, 493 U.S. 899, 110 S.Ct. 254, 107 L.Ed.2d 203 (1989). Moreover, the jury necessarily learned otherwise that the defendant was incarcerated when the letters were sent.

The court's curative instruction, given immediately after the remark, conveyed to the jury in no uncertain terms that it was to disregard the information. The United States Supreme Court has consistently held that even in criminal cases, the Court will "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions ... and a strong likelihood that the evidence would be devastating to the defendant.'" *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1978) (Citations omitted.). Accord: *United States v. Tyler*, 878 F.2d 753, 762 (3d Cir.1988).

■ Further, any prejudice flowing from a reference to prior bad acts must be balanced against the evidence of guilt. See *United States v. Munford*, 431 F.Supp.

278, 290 (E.D.Pa.1977), citing *United States v. Cook*, 505 F.2d 659, 664 (5th Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975). Here, the evidence of guilt was substantial. The government presented overwhelming evidence that the defendant wrote and sent the threatening letters as charged in the indictment. At trial, defendant did not deny that he wrote the letters. The focus of his defense was his mental state and the reasons that he wrote them.

Although the defendant argues that his motion should be granted because the reference to prior offenses severely undercut his defense that he suffered from a severe mental defect and should be helped, not penalized for his actions, we do not agree. It is true that defendant's theory of the case was as stated, but we disagree with the contention that Dr. Backer's fleeting reference to other acts severely undercut the defense raised. Defendant makes much more of the comment than it was. Contrary to defendant's argument, Dr. Backer made no reference to the defendant being "under his care as far back as 1980". As noted above all that he said, before an objection was interposed, was that defendant "wrote letters before" and was prosecuted for that act. There was no implication that defendant "was offered help for a number of years but to no avail", nor was the defendant "painted" as "incorrigible and a lost cause", a hopeless recidivist, as defendant argues.

It also bears noting that the information about prior criminal acts was not solicited intentionally by the government. The question asked was not calculated to elicit such information from the witness. Thus the jury's exposure to the objectionable information was minimal; the jurors heard only a few words about some prior act committed by the defendant before an objection was interposed by counsel.

Further, the jury had before it considerable evidence rebutting defendant's theory that he suffers from organic personality syndrome and should, therefore, not be held criminally responsible for writing the letters. The government presented exten-

sive expert testimony specifically rebutting Dr. Hostetter's diagnosis and buttressing its theory that defendant suffers from a less severe mental defect than he contends.

Because Dr. Backer's reference to other acts was not intentionally solicited by the government, because the reference was brief and non-specific, because the court's immediate curative instruction was sufficient to remedy any potential prejudice flowing from the remark, and because the evidence of guilt was substantial, we find that Dr. Backer's remark does not require grant of a new trial. The court did not err in refusing to grant a mistrial. See generally: *United States v. Colon*, Crim. No. 92–00372, slip op. at 5 (E.D.Pa. Oct. 21, 1992) (WESTLAW 1992 WL 309633).

*Refusal to grant a continuance*

■ Defendant argues that the court erred in refusing to continue the trial so that medical tests, specifically an EEG, a CT scan or an MRI scan could be conducted to buttress Dr. Hostetter's diagnosis and to rebut the government's experts' diagnosis of borderline personality disorder. Counsel for the defendant requested a continuance for that purpose at the conclusion of the competency hearing held May 22, 1992. (N.T., May 22, 1992 at pp. 77–79) That was the first time such a request was made. The court denied the request for a continuance, with, however, the understanding that the government would attempt to arrange that such tests be performed prior to trial. (N.T., May 22, 1992 at p. 90) The government was unable to guarantee that the requested tests could be performed prior to trial. When trial commenced, on June 8, 1992, they had not been performed due to lack of time.

■ The grant or denial of a continuance is within the discretion of the district court. To establish that the denial of a continuance request was an abuse of discretion, the party challenging it must show that the denial was "arbitrary or unreasonable".

*United States v. Pope*, 841 F.2d 954, 956 (9th Cir.1988), quoting *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir.1985). The Ninth Circuit Court of Appeals has listed four factors to be considered in determining whether denial of a continuance was an abuse of discretion: (1) the diligence of the requesting party in preparing for trial; (2) the likely usefulness of granting the continuance; (3) the inconvenience to the court and the opposing party; and (4) prejudice flowing from the denial.

Applying these factors, we find that the refusal to grant a continuance was not an abuse of discretion. Nor was it prejudicial error which resulted in a miscarriage of justice. Defendant made no request that such tests be conducted until ten days before jury selection. Defendant had considerable time prior to that to request that such tests be conducted but did not do so.[4] Jury selection took place, as scheduled, June 1, 1992. Delaying the start of trial would have necessitated that it be continued, and would have inconvenienced the court and the government. See generally: *United States v. Brown*, 699 F.2d 585, 594 (2nd Cir.1983) (district court properly refused to delay commencement of trial when defendant had sufficient time prior to trial to locate a missing witness and assure her presence at trial).

Defendant had initially taken the position that such testing was not necessary. Defendant's expert, Dr. Hostetter, testified that such tests were not necessary to his diagnosis, stating that his diagnosis was based on psychological tests performed on the defendant and on his observations of his behavior, speech patterns, conversation, etc.[5] Defendant's position on this issue changed only after the government's expert, Dr. Rushton Backer, testified that such evidence was critical to the diagnosis of organic personality syndrome made by Dr. Hostetter. It was at that point that a continuance was requested by defendant's

---

4. Dr. Hostetter evaluated the defendant on October 23, 1991. (N.T., May 22, 1992 at p. 8). His report on his findings and conclusions was prepared January 21, 1992.

5. Dr. Hostetter testified that while it was desirable to know the cause of the condition he diagnosed in the defendant, it was not essential to the diagnosis. (N.T., May 22, 1992 at pp. 27–29).

counsel so that such tests could be conducted. At no time did defendant's expert testify that such additional tests were necessary.

Additionally, there was expert testimony from the government's witness that the requested test results would not have furthered the defense's theory at trial. Dr. Owens testified that a high fever in a child or young adult, which Dr. Hostetter posited could have been responsible for the organic brain damage he diagnosed in defendant, would not have brought about physical changes to the brain reflected in the tests requested, i.e. an EEG, MRI or CAT scan.

These considerations distinguish this case from others in which the refusal to grant a continuance to secure expert testimony to support an insanity defense was found to be an abuse of discretion. In *Pope, supra,* 841 F.2d at 958, the Third Circuit held that the district court's refusal to grant a brief continuance so that defendant could secure an expert to support his insanity defense "deprived him of the only testimony that could plausibly have helped him. He was clearly prejudiced." *Id.* Unlike the defendant in this case, Pope had no expert testimony to support his insanity defense, and, consequently no defense. Similarly, in *Flynt, supra,* 756 F.2d at 1359–61, the district court's refusal to grant a requested continuance was held to be reversible error because it deprived the defendant "of the only testimony potentially effective to his defense". *Id.* at 1361. There, again, the defendant was seeking an opportunity to secure an expert to testify in support of his defense, not merely additional time to secure *additional* support for the expert testimony he planned to present at trial, as was the case here.

Under the circumstances, we find that defendant's request for additional medical testing was untimely, that the denial of a trial continuance for matters which could have been taken care of long before was not arbitrary or unreasonable, that denying the continuance request did not unfairly prejudice the defendant, and does not warrant the grant of a new trial.

### Refusal to grant motion in limine

██ Defendant argues that the court's refusal to grant his motion in limine to prevent the government from mentioning the absence of medical evidence of an organic brain disorder constitutes reversible error. Defendant moved to exclude such evidence on the ground that the government should be precluded from relying on that deficit to attack the credibility of the defendant's medical expert.

This alleged error is tied to the refusal to grant a continuance, and will be rejected for the same reasons. Defendant waited until just prior to commencement of trial to determine that such tests would be useful to his defense. At that time, an attempt was made by the government to have such tests performed prior to trial, but the effort was unsuccessful due to the lateness of the request. We will, therefore, reject the denial of defendant's motion in limine as a ground for the grant of a new trial.

### Refusal to charge on the fate of defendant should he be found not guilty by reason of insanity

██ Defendant argues that the court's refusal to grant its request to charge the jury on defendant's fate should he be found not guilty by reason of insanity ("NGI") constitutes reversible error.[6] (See: N.T., June 9, 1992 at pp. 124–26 and June 10, 1992 at pp. 79–80) The defendant cites

---

**6.** The Insanity Reform Act of 1984, 18 U.S.C. §§ 4241–4247 (the "1984 Act") governs the fate of an individual tried on federal charges and found "not guilty only by reason of insanity".

As Justice Stevens stated in *Frank v. United States,* — U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (petition for cert. denied) (1992), the 1984 Act

ensures that a federal criminal defendant found not guilty by reason of insanity will not

be released onto the streets. It provides that "the Attorney General shall hospitalize the person [found not guilty by reason of insanity] in a suitable facility" until a State assumes responsibility for his care and treatment or the Attorney General finds that his release would not create a risk of harm to people or property.

*Id.* quoting 18 U.S.C. § 4243(e).

only one case, *Taylor v. United States*, 222 F.2d 398 (D.C.Cir.1955), as authority for the proposition that a commitment instruction is required.

In *Taylor, supra,* the Court of Appeals for the District of Columbia Circuit held that such an instruction is required when a NGI verdict is one of the jury's options, stating:

> ... when an accused person has pleaded insanity, counsel may and the judge should inform the jury that if he is acquitted by reasons of insanity he will be presumed to be insane and may be confined in a 'hospital for the insane' as long as 'the public safety and (his) welfare' require. Though this fact has no theoretical bearing on the jury's verdict it may have a practical bearing.

*Id.* at 404.

*Taylor, supra* is one of several cases decided by the District of Columbia Circuit which hold that such a commitment instruction is required. The other case in that line most often cited is *Lyles v. United States*, 254 F.2d 725 (D.C.Cir.1957), *cert. denied*, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958).

The District of Columbia Circuit stood alone in requiring that instruction, in part, because of the state of federal law prior to 1984. 1984 marked the passage of the Insanity Defense Reform Act, codified at 18 U.S.C. §§ 4241–4247, (the "1984 Reform Act"). Prior to 1984, there was no federal statute providing for mandatory commitment of the defendant in the event an NGI verdict was returned. The District of Columbia has had such a statute since 1955, a circumstance which accounts for the different development of this issue in courts outside the District. *Frank v. United States*, —— U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992) (petn. for cert. denied) (Stevens). See also: *United States v. McCracken*, 488 F.2d 406, 422 (5th Cir. 1974).

Prior to 1984, a defendant acquitted of federal criminal charges by reason of insanity in a case tried anywhere other than the District of Columbia was "simply released with the hope that State authorities may commence civil commitment proceedings", although "[t]here is no assurance that the State will act". *United States v. Alvarez*, 519 F.2d 1036, 1048 (3d Cir.1975). Accord: *Government of Virgin Islands v. Fredericks, supra,* 578 F.2d at 935 n. 13.

Prior to passage of the 1984 Reform Act, the District of Columbia was the only federal district in which a commitment instruction was realistically possible, because prior to that time, the fate of a defendant found not guilty by reason of insanity could not be stated with any real degree of certainty.

Despite the removal of that impediment by passage of the 1984 Reform Act, the *Lyles–Taylor* line of D.C. cases still stand alone in their endorsement of a *requirement* that a commitment instruction be given when requested by the defendant. No circuit outside the District has adopted that position, either before *or after* passage of the 1984 Reform Act. *United States v. Frank*, 956 F.2d 872, 878–882 (9th Cir. 1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992).

The argument that such a charge is appropriate has been rejected by numerous federal courts for reasons grounded in basic and unquestioned legal precepts. It has long been established that it is the role of the judge to determine the consequences of a guilty verdict and that the jury is not, and should not, be concerned with or involved in making that determination. "Absent a statutory requirement that the jury participate in the sentencing decision, nothing is left 'for jury determination beyond the guilt or innocence of an accused.'" *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir.1980).

The purpose of the charge is to inform the jury of what it needs to know to reach a sound, reasoned verdict. To that end, the charge states the nature of the charges brought, defines the offenses charged, describes each essential element of the offenses charged, states the defenses raised to the charges brought and defines them. There is no need for the jury to be told what will happen to the defendant if it makes certain findings or conclusions.

Such information is not logically relevant to its deliberations and places before it extraneous information having no logical relevance to or bearing on the issue which it is called upon to decide, i.e. the guilt or innocence of the accused. Informing the jury of the probable or possible consequences of its verdict not only places before it irrelevant information, it creates the possibility that its verdict will be influenced by matters which do not bear on the guilt or innocence of the accused. *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir.1974) (Unless exceptional circumstances exist, e.g. a statutory mandate, the jury plays no role in determining the punishment to be imposed and should not consider that issue in its deliberations.). Informing the jury about "matters relating to disposition of the defendant" diverts its attention away from the issues which should concern it, tends to confuse the issues and opens the door to compromise verdicts. *United States v. Portis*, 542 F.2d 414, 420–21 (7th Cir.1976) and *Pope v. United States*, 298 F.2d 507 (5th Cir.1962).

The federal courts which have ruled on this issue following enactment of the 1984 Reform Act have held that the Act permits, but does not require, that a commitment instruction be given. In *United States v. Blume*, 967 F.2d 45, 49 (2nd Cir.1992), the Second Circuit rejected the defendant's contention that the district court was *required* to give a jury instruction on the consequences of returning an NGI verdict. The court stated that the plain language of the 1984 Reform Act does not *require* that a commitment instruction be given but leaves that decision to the discretion of the district court.

The Ninth Circuit reached the same conclusion in *United States v. Frank*, 933 F.2d 1491, 1497–1500 (9th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992), stating that the 1984 Reform Act

does *not* provide that a jury must be instructed regarding the consequences of a finding of not guilty by reason of insanity ... No reference is made in the statute to the subject of jury instructions ...

Frank has failed to cite any language in the statute that expresses Congress' intent that a jury must be informed of the consequences of a finding of not guilty by reason of insanity.... Frank's only support for his argument that Congress intended that juries be instructed concerning the consequences of a verdict of not guilty by reason of insanity is the following observation in the Senate Committee report:

The Committee endorses the procedure used in the District of Columbia whereby the jury, in a case in which the insanity defense has been raised may be instructed on the effect of a verdict of not guilty by reason of insanity. If a defendant requests that an instruction not be given, it is within the discretion of the court whether to give it or not.

. . . .

This statement does not have the force of law nor does it purport to interpret or explain ambiguous language in the statute regarding jury instructions....

It was no concern to the jury in this matter, under the law of this circuit, that the Insanity Defense Reform Act provides for the commitment of a defendant to a suitable facility if he is found not guilty by reason of insanity.

*Id.* at 1499–1500 (Citations omitted, emphasis in original).

The Supreme Court denied a petition for writ of certiorari. *Frank v. United States*, —— U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992). Justice Stevens, writing independently in support of the decision to deny certiorari, endorsed the holding in *Lyles, supra*. Justice Stevens reaffirmed his position stated years earlier in the dissent in *United States v. Greene*, 497 F.2d 1068, 1072 (7th Cir.1974) (Stevens, J., dissenting), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975), that a district court's refusal to give the commitment instruction in "an appropriate case" can constitute "plain error". Justice Stevens was not, however, writing for the Court and, in fact, stated in his opinion that a memorandum

opinion explaining the rationale for denying certiorari is not a ruling on the merits. Justice Stevens' statement is, therefore, not an indication as to how the Supreme Court would rule on this issue. Moreover, the denial of certiorari had the effect of allowing to stand the Ninth Circuit's rejection of the proposition that the 1984 Reform Act requires that a commitment instruction be given.

Although the Third Circuit Court of Appeals has not addressed what the 1984 Reform Act requires, it commented on the issue in two pre–1984 Reform Act cases. In *Government of Virgin Islands v. Fredericks*, 578 F.2d 927, 935 (3d Cir.1978), the court declined to decide whether Virgin Islands law required that a commitment instruction be given when requested by the defendant, stating that since the judge had conveyed to the jurors the information requested during *voir dire*, there was no need to consider whether the court was required to repeat that information in the charge. *Id.* at 936. The court's comments on the issue, however, are instructive. The court noted, as did the courts in *Taylor, supra* and *Lyles, supra*, that there is some merit to the argument that such a commitment instruction may be appropriate because of the issues an NGI option may raise in the minds of the jurors:

> It is clear that the consequences following any verdict are solely a matter for the judge and for the legislature. What is done with defendant after any verdict should not in the slightest affect the decision of the jury on whether that defendant is guilty or innocent. . . .

Nonetheless, the requested instruction on the consequences of the insanity verdict presents a *unique* situation where there may be a common misunderstanding, not of the particulars of the result of a verdict, but of the nature of the verdict itself. The words 'not guilty' contained in the insanity verdict invoke the idea that a potentially dangerous defendant will be unconditionally released after trial, while in fact he faces mandatory corrective proceedings. A juror who feels that a verdict importing freedom for defendant will endanger the community might, out of his sense of social responsibility, be swayed from rational deliberation and be unwilling to weigh properly the evidence of defendant's mental condition. . . . This type of problem arises solely with respect to the insanity verdict.

*Id.* at 935–36 (emphasis in original).

The court went on, however, to express its reluctance to have such an instruction given, stating:

> To accept defendant's reasoning, however, would be a substantial departure from the usual rules for allocating responsibility between the judge and jury. . . . He asks, in effect, that we assume that the jury will disregard its instructions to ignore the consequences of its verdict and then allow erroneous extraneous information to affect its judgment. The cure proposed is to give the jury the correct information, which it should then be instructed to ignore.

> Further, we note that accepting this reasoning could be prejudicial to a criminal defendant. A juror who is convinced that a defendant is dangerous, but who believes that he did not in fact commit the acts charged, might be willing to compromise on a verdict of not guilty by reason of insanity rather than insist on an acquittal. . . .

*Id.* at 936 (Citations omitted.). See also: *United States v. Alvarez*, 519 F.2d 1036, 1048 (3d Cir.1975) (Court refused to reverse as error district court's refusal to give a commitment instruction, distinguishing cases decided in the District of Columbia courts on the basis of the existence of defined commitment procedures in the district which do not exist elsewhere under federal law).

*Fredericks, supra* suggests that the Third Circuit would follow the lead of every other circuit which has considered this issue since passage of the 1984 Reform Act and would rule that the Act permits, but does not require, that a commitment instruction be given and leaves the decision to grant or deny such a request to the discretion of the district court.

We note, finally, that *Lyles, supra,* and *Taylor, supra,* are also distinguishable on their facts. In both, the reason given for requiring the instruction as to defendant's fate was possible confusion or uncertainty on the part of the jury on that point. In *Lyles, supra,* 254 F.2d at 728, in particular, the District of Columbia Court of Appeals noted that jurors are clear on what will become of the defendant should they find him either guilty or not guilty, but have no such knowledge of the effect of their returning a not guilty by reason of insanity verdict.

That rationale does not apply to the facts of this case. Here, the jury necessarily knew that defendant was incarcerated at the time that the letters were written and at the time of trial. Thus they knew that he was currently serving a sentence for other federal crimes. It would be illogical to assume that they would conclude that he would be released into society should they return a verdict of not guilty by reason of insanity. To the contrary, they would logically assume that defendant would continue serving his federal sentence. See: *Portis, supra,* 542 F.2d at 421 ("[T]he record discloses that in the course of the trial ... [defendant's] involuntary commitment to Manteno State Hospital in 1968 was amply discussed; it would seem unlikely that a jury hearing such evidence would necessarily assume that a perhaps dangerous and mentally ill person would automatically be left free to inflict harm on the community.") Cf. *Frank, supra,* —— U.S. at ——, 113 S.Ct. at 363 (Refusal to give the commitment instruction creates "a strong possibility that the jury will be reluctant to accept a meritorious defense because of fear that a dangerous, mentally-ill person will go free.") and *Taylor, supra* (District court's failure to give a commitment charge did not constitute reversible error, noting that the court had not conveyed to the jury the erroneous impression that, if acquitted, the defendant would go free.).

While we recognize that the propriety of giving or declining to give a commitment instruction is a much debated issue,[7] we are convinced that the 1984 Reform Act does not mandate that the requested instruction be given, but leaves that decision to the discretion of the district court. In light of the considerations discussed above, we find that the refusal to give that instruction in this case was not an abuse of discretion and does not constitute prejudicial or reversible error. See generally: *Blume, supra,* 967 F.2d at 53 (Newman, concurring) (District court's refusal to give the commitment instruction was harmless error based on factors indicating "that there was no substantial risk that ... [the] jury withheld an NGI verdict they might otherwise have rendered for lack of information as to the mandatory commitment that would have followed such a verdict.")

---

7. See, e.g., *Blume, supra,* 967 F.2d at 50–53 (Newman, J., concurring) and *Frank, supra,* 956 F.2d at 882–84 (Hug, J., dissenting).

Cf. *Frank, supra,* —— U.S. at ——, 113 S.Ct. at 363 (Justice Stevens wrote that the Court declined to grant certiorari because there was "no square conflict between two Courts of Appeals" and it is the Court's "normal practice" to await such a conflict before "considering the significance of new federal legislation.")