Thomas F. CASALE and Vincent J. Federico, Plaintiffs,

v.

Michael V. FAIR, Defendant.

Civ. A. No. 85–3375–Mc.

United States District Court, D. Massachusetts.

Feb. 17, 1987.

David Berman, Berman & Moren, Medford, Mass., for plaintiffs.

Asst. Atty. Gen. Martin E. Levin, Boston, Mass., for defendant.

## OPINION

McNAUGHT, District Judge.

This petition for habeas corpus was brought by Thomas Casale and Vincent Federico who were found guilty of second degree murder in the Suffolk County Superior Court, Commonwealth of Massachusetts on December 22, 1978 by a jury.

The judgments of conviction were affirmed on appeal by the Supreme Judicial Court of the Commonwealth. *Commonwealth v. Casale*, 381 Mass. 167, 408 N.E.2d 841 (1980). Subsequently, the judge who presided over the jury trial denied a motion for a new trial. An appeal was taken from that action to the Massachusetts Appeals Court, where the petitioners asserted (1) that they were entitled to an instruction on manslaughter which was not given, (2) that they were indicted for murder separately and hence could not have been convicted on a joint enterprise theory, (3) that the judge committed error instructing the jury, (4) that they had been denied equal protection of the laws, since another defendant had been granted a directed verdict. In *Commonwealth v. Ca-*

*sale*, 16 Mass.App.Ct. 1103 (1983), the order denying the motion was affirmed. The Appeals Court in its decision stated that the claims could have been made at trial, and, on the appeal to the Supreme Judicial Court, but that they were not. Further review was denied by the Supreme Judicial Court.

Now the petitioners assert entitlement to the writ, claiming (1) insufficient evidence for the jury to find the petitioners guilty beyond a reasonable doubt, (2) unwarranted adoption by the Supreme Judicial Court of "a theory of joint enterprise to support the convictions", (3) failure to charge joint enterprise in the indictment, (4) error on the part of the trial judge in charging the jury that "intent is judged from conduct", (5) error on the part of the trial judge in instructing the jury that they knew "how the victim was brought to his death", (6) denial of equal protection in refusing petitioners' motion for a directed verdict after allowing the motion of another defendant, (7) inadequacies of trial counsel. We deal with each of these in turn.

### The Sufficiency of the Evidence for a Finding of Guilt Beyond Reasonable Doubt

█ "Murder in the second degree is an unlawful killing with malice aforethought; malice includes any intent to inflict injury on another without legal excuse or palliation." *Commonwealth v. Casale*, 381 Mass. at 171, 172, 408 N.E.2d 841. The opinion by Mr. Justice Quirico continues: "A fatal blow purposefully and wrongfully inflicted and not the product of chance or the frailty of human nature is malicious and murderous." At 172.

The Court determined that the evidence was sufficient, not only for a conviction of second degree murder, but sufficient "to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt".

The defendants on November 6, 1977 were in an area of Stillman Street, Boston, where the belongings of Lynne Russo were being removed from her apartment by Rob-

ert McFarlane (the victim) and three other persons, into a van on the street. Casale and Federico "were frequently standing in and going in and out of the doorway ... and were in the way some of the time. Federico sometimes blocked the path of the people carrying the boxes and sometimes spat on the sidewalk." Casale spat on the sidewalk in front of one of the movers, and he and Federico swore at one of them for ten minutes. Asked to leave the people in peace, the petitioners nonetheless asked if they wanted to fight. Now Casale went away and Federico went to his apartment. Casale returned with three other persons. Federico joined them. They passed by the van, hesitated in front of it, then went into a playground. McFarlane walked the "length of the van and turned in front of it". Five shots were fired from the playground, and as he fell, McFarlane said: "They got me. They got me". Ms. Russo, from her apartment kitchen window saw the petitioners and Joseph A. Bruno, Jr. A police officer who heard the shots ran to the scene and observed bullet holes in the victim's chest. When two officers spoke to Casale on Prince Street, he ran. On this evidence and inferences which the jury would have been warranted in drawing, the Supreme Judicial Court determined that the jury could have found that the petitioners were present in the area from which the shots were fired; that they were in a position to render aid to the shooter, [*Commonwealth v. Knapp*, 9 Pick 495 (1830): "... (E)ven if he does not participate in the actual perpetration of the crime ... his presence may encourage the perpetrator by giving him hope of immediate assistance ..." *Casale* at 173, 408 N.E.2d 841]; that the jury could have inferred the requisite intent from the circumstances and the conduct of the defendants including their hostility toward the movers, the attempt to provoke a physical confrontation, the obtaining of help by Casale and their being with the group as it passed the van and entered the playground, plus their presence there when the shots were fired.

Justice Quirico wrote for the Court that the Commonwealth didn't have to prove which person fired the gun; that there was strong circumstantial evidence that one of them shot and killed McFarlane (Russo saw Federico standing in a fence opening from which the shots were fired) and the doctrine of joint enterprise was explained properly to the jury by the trial judge.

As argued by the respondent in his memorandum in opposition, the petitioners cannot (and do not) contest the sufficiency of the evidence for a jury to find second degree murder. They argue, instead, that there was insufficient evidence for *them* to be found guilty. "At trial the Commonwealth made no showing that the opportunity of the five young men who marched past the van to commit the crime was exclusive. For aught that is shown by the evidence, the shots that killed MacFarlane (sic) could have been fired by entirely different persons". Petitioners' Brief, p. 4. Petitioners argue a lack of motive to kill. Motive, of course, is not an essential element of a crime. Neither is "exclusive opportunity".

On the evidence presented at trial, and reviewed by the Supreme Judicial Court on appeal, the jury could easily find beyond reasonable doubt the involvement of the petitioners, and their responsibility as joint enterprisers. The sentence on page four of Petitioners' Brief—"Faced with such a total lack of evidence, the Supreme Judicial Court found, one is tempted to say invented, a theory of joint enterprise to support the convictions"—is frivolous, if not insulting. The trial judge noted that all parties knew that the prosecution would proceed on a theory of joint enterprise.

*The Propriety of Conviction on a Joint Enterprise Theory on an Indictment for Murder*

Petitioners argue that their rights under the Sixth Amendment to the Constitution were violated since they were not informed of the "nature and cause of the accusation", citing *United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 23 L.Ed. 588 (1876). They contend that, if they were to be charged as joint enterprisers they should have been joined in the same indict-

ment, "the customary method of alleging joint enterprise in Massachusetts" or by "some reference in each indictment to a theory of joint enterprise".

The short answer to this claim is that there is no decision or statute that has been called to the attention of the Court setting forth the requirement that a theory such as joint enterprise be recited in an indictment. All parties knew the basis on which the prosecution was proceeding (joint enterprise), and nothing indicates that the trial was affected in any manner by the fact that the indictments contained the usual language employed in charging a defendant with murder.

### Alleged Error in the Trial Judge's Instructions

■ Next, the petitioners claim violation of their Constitutional rights in that the trial judge stated to the jury: "We judge it (intent) by what a person does and we draw our conclusions from that." Petitioners say that this is "mandating a conclusion from conduct". They compare this statement to the instruction held unconstitutional in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979): "The law presumes that a person intends the ordinary consequences of his voluntary acts". In *Sandstrom,* the language quoted was deemed violative of Due Process in that the jury could have interpreted it as a "conclusive presumption"—a direction to find intent if convinced of facts triggering the "presumption".

Petitioners are wrong. The trial judge didn't use "presumption" terms at all. A study of his instructions reveals that he used "permissive" language, stating that "malice *may* be inferred", "intent … may be inferred", and he emphasized the burden of the prosecution to prove specific intent, and indeed to prove all elements of the crime charged beyond a reasonable doubt.

### Alleged Error Concerning Instruction on Knowledge of How the Victim Met His Death

■ At one point in his instructions the judge told the jury: "(Y)ou know how the victim was brought to his death". Of this, the petitioners claim error entitling them to issuance of the writ. Somehow, petitioners read into this a mandate that the jury find that the victim met his death as a "result of homicide", and that, therefore the prosecution was excused from carrying its burden in that regard.

The petitioners' conclusion in this regard is unwarranted. The trial judge obviously was referring to the fact that the victim died of bullet wounds, having been shot. At trial, no one disputed the fact that the victim died from a bullet wound. In the transcript, at page 1062, counsel for one defendant, in final argument, stated: "We know that there was a gun used to bring about the death of Mr. McFarlane". To ascribe more meaning to the judge's statement in this regard requires torturing the language employed by him. There was no denial of Due Process in this regard.

### Alleged Denial of Equal Protection in the Allowance of Bruno's Motion for Directed Verdict

■ The petitioners' motions for directed verdict were denied, although the motion of the defendant Bruno was allowed. In this, petitioners see a denial of equal protection of the laws.

The judge, in his Memorandum of Decision (pages 12–15, record appendix, appeal to Supreme Judicial Court) explained the reason for his allowance of Bruno's motion: the failure of the Commonwealth to link Bruno with anything but the subsequent flight from the scene, and the absence of evidence that Bruno participated (with Casale and Federico) in the prior harassment of the movers. Separate inquiry into the sufficiency of the evidence as it was directed toward defendant Bruno is not a denial of equal protection to Casale and Federico. Such treatment (of the defendants separately) is by no means "inconsistent" treatment. Nor is it illogical. Cases such as *United States v. Maybury,* 274 F.2d 899 (2d Cir., 1960) are inapposite. Nor do res

judicata or collateral estoppel figure in this case.

### Alleged Ineffective Assistance of Counsel

 One portion of petitioners' brief is devoted to a claim that trial counsel were ineffective in performance in that they did not carry out an investigation to determine whether anyone other than they had a motive to injure or kill McFarlane or his friends, although they "knew or should have known" that the government would be unable to show a motive with respect to them.

There was nothing in the transcript, which the writer could find, that would call for such an investigation—nothing to indicate that there was anyone at the shooting scene other than the group including the petitioners who would have any reason for involvement with the victim and his friends. Nothing demonstrates a need for an investigation, let alone, that such investigation would have changed the result in the case. There was no "ineffectiveness of counsel" in this regard.

 Neither will this Court fault counsel for failure to request a manslaughter instruction. The evidence did not call for such a request. They couldn't have been convicted of manslaughter; hence, the judge wasn't required to charge upon it (despite the contention by petitioners to the contrary). There was nothing on which the jury could find the shots were intended simply to frighten, without physical harm. Had there been such evidence, the complaint of petitioners would be legitimate. On this record, it isn't.

Petition denied.