Thomas S. CASALE, et al.,
Petitioners, Appellants,

v.

Michael FAIR, etc.,
Respondent, Appellee.

No. 87–1180.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1987.
Decided Nov. 18, 1987.

David Berman, with whom Berman and Moren, Lynn, Mass., were on brief, for petitioners, appellants.

* Of the Second Circuit, sitting by designation.

Susan S. Beck, Asst. Atty. Gen., Crim. Bureau, Boston, Mass., with whom James M. Shannon, Atty. Gen., and A. John Pappalardo, Deputy Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

TIMBERS, Circuit Judge:

Appellants Thomas S. Casale ("Casale") and Vincent Federico ("Federico") appeal from a judgment entered February 17, 1987 in the District of Massachusetts, John J. McNaught, *District Judge*, 653 F.Supp. 856, which denied their petition for a writ of habeas corpus brought by appellants pursuant to 28 U.S.C. § 2254 (1982). Appellants are prisoners of the Commonwealth of Massachusetts, having been convicted of second degree murder on December 22, 1978 after a jury trial.

On the instant appeal, appellants claim, first, that the evidence was insufficient to sustain their convictions of second degree murder on a theory of joint enterprise; second, that they could not be convicted on a joint enterprise theory when they had been indicted separately; third, that the trial court erred in instructing the jury that it could judge intent from conduct and that it knew how the victim met his death; fourth, that they were denied equal protection of the law when the trial court denied their motions for directed verdicts while granting a similar motion by their codefendant; and, fifth, that they were denied effective assistance of counsel at trial.

We hold that the evidence at trial was sufficient to sustain the convictions of second degree murder on a theory of joint enterprise; that appellants waived their claims regarding the necessity for joint indictments, the jury instructions and equal protection; that appellants failed to exhaust state remedies with respect to other claims regarding the trial court's instructions on the joint venture theory and the ineffectiveness of state appellate counsel;

and that appellants were not denied effective assistance of counsel at their trial.

We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

On the morning of November 6, 1977, Robert McFarlane, who was destined to become the victim in this case, was helping Lynne Russo load her possessions into a van parked in front of Russo's apartment on the fifth floor of No. 20 Stillman Street in Boston. Three other friends, William Hackler, James Theologus and Dominic Monforte, also assisted with the moving. During the two hours that the group ("Russo's group") spent loading the van, appellants repeatedly harassed them, blocking the doorway, swearing, spitting on the sidewalk and challenging them to fight.

At about 11:30 a.m., appellants had a conversation in the doorway of No. 18 Stillman Street. Federico then went into No. 20 Stillman Street, where he lived on the second floor. Casale left and was later seen returning with Joseph Bruno and two unidentified persons. This group of four ("Casale's group") was seen moving quickly, two by two, in a "strong steady march" toward Stillman Street. When this group reached the corner of Stillman and North Margin Streets, Federico quickly emerged from his building and joined the group, which then passed by the van. Casale's group paused in front of the van and then went into a playground across the street. At this point, which was about 12:30 p.m., McFarlane and his friends were near the van and Russo was upstairs. Five shots rang out from the playground area. McFarlane fell to the ground, saying, "They got me. They got me." McFarlane later died of a gunshot wound.

Two of McFarlane's friends saw Casale running in the playground and pursued him. When Russo heard the shots she looked out her fifth floor window. She saw Casale and Bruno running and Federico standing near an opening in the playground fence. During the loading of the van and at the time of the shooting, neither Russo nor anyone in her group had seen any other people in the area aside from the five in Casale's group.

A short time later, two police officers responded to a report of the shooting. They noticed Casale running down the street. By the time they were able to catch up with him, Casale had stopped on the sidewalk. When they pulled alongside him, however, and one officer began to get out of the car, Casale ran down another street. Other officers found Bruno and Federico in a bowling alley.

The evidence indicated that the person who shot McFarlane had fired the shots from the gap in the playground fence. Specifically, ballistics analysis showed that a bullet that had lodged in a sign on Stillman Street was fired from the gap in the fence. Appellants stipulated that the bullet found in the sign and a bullet found under McFarlane's body were fired from the same gun. Thus, it was likely that the bullet found under McFarlane's body was fired from the gap in the fence.

On April 20, 1978, Casale, Federico and Bruno were indicted in the Suffolk County Superior Court for the murder of McFarlane. After denial of their motions for a directed verdict, the three defendants were found guilty on December 22, 1978. All three renewed their motions after the verdict. The trial court granted Bruno's motion but denied those of Federico and Casale. The Supreme Judicial Court affirmed appellants' convictions on July 17, 1980. *Commonwealth v. Casale*, 381 Mass. 167, 408 N.E.2d 841 (1980).

On March 18, 1982, appellants moved for a new trial. They asserted ten grounds, including three they had not previously raised. This motion did not include grounds based on error in the jury instructions on joint enterprise or ineffectiveness of appellate counsel. The trial court denied this motion and appellants appealed. The Appeals Court affirmed. *Commonwealth v. Casale*, 16 Mass.App.Ct. 1103 (1983). The Supreme Judicial Court denied appel-

lants' application for further appellate review.

On August 20, 1985, appellants filed the instant habeas petition. The district court required appellants to amend their petition to delete several claims for failure to exhaust state remedies, including claims regarding instructions on joint enterprise and ineffectiveness of state appellate counsel. Appellees challenged four of the claims in the petition on the ground that appellants had waived them. The district court denied the petition on February 17, 1987. This appeal followed.

For the reasons stated below, we affirm.

## II.

■ The standard applied in a habeas proceeding challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution," a rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case the crime charged was murder in the second degree. The prosecution relied on a theory of joint enterprise. Thus, the issue presented is whether a rational jury could have found that the prosecution had met the standards for second degree murder and joint enterprise liability. We are satisfied that a rational jury easily could have so found.

Second degree murder in Massachusetts is "an unlawful killing with malice aforethought." *Commonwealth v. Casale, supra*, 381 Mass. at 171, 408 N.E.2d at 844. "Malice" includes committing an act that creates "a plain and strong likelihood that death or grievous harm will follow." *Commonwealth v. Lowe*, 391 Mass. 97, 107, 461 N.E.2d 192, 198–99, *cert. denied*, 469 U.S. 840 (1984).

Moreover, under the Massachusetts theory of joint enterprise, one may be punished in the same manner as a principal if one "aids in the commission of a felony." Mass.Gen.L.Ann. ch. 274, § 2 (West Supp. 1987). Although mere presence at the scene of the crime and knowledge of the intended act is insufficient, *Common-*

*wealth v. Soares*, 377 Mass. 461, 471, 387 N.E.2d 499, 507, *cert. denied*, 444 U.S. 881 (1979), one may be found guilty as an aider if he, "by agreement, is in a position to render aid to the principal offender, even if he does not participate in the actual perpetration of the crime...." *Id.* at 471–72, 387 N.E.2d at 507. The jury may infer an agreement from the aider's actions. *Commonwealth v. Whitehead*, 379 Mass. 640, 652, 400 N.E.2d 821, 832 (1980). While the aider must share the principal's intent, *Commonwealth v. White*, 392 Mass. 282, 289, 467 N.E.2d 79, 83–84 (1984), a jury presumably may infer that intent from the aider's actions, just as it may infer the principal's intent. *Commonwealth v. Ferguson*, 365 Mass. 1, 3, 309 N.E.2d 182, 186–87 (1974).

Under these principles, a rational jury could have drawn the inferences necessary to find that appellants had participated in a joint enterprise to commit second degree murder. Such a jury could have begun the decision-making process by considering the facts that someone shot McFarlane; that no other persons were seen near the scene at the time of the shooting; and that Casale was seen running from the scene. From these facts, a jury could have inferred that someone in Casale's group pulled the trigger and that someone in Casale's group thereby committed an act that created a "strong likelihood that death or grievous harm" would follow—i.e., an act that constituted second degree murder.

Even assuming, moreover, that Casale or Federico did not themselves pull the trigger, a rational jury could have inferred from their actions that they intentionally became part of a joint enterprise to shoot McFarlane. Such actions would include particularly Casale's and Federico's prior harassment of Russo's group; their subsequent meeting in the doorway of No. 18 Stillman Street; Casale's departure and return with three other men, walking two-by-two in a quick purposeful manner; and Federico's rejoining this group. In short, these actions and the other evidence were more than sufficient to permit a rational

jury to find guilt beyond a reasonable doubt.

We hold that the district court correctly held that the evidence was sufficient to sustain the convictions for second degree murder on a theory of joint enterprise.

### III.

We turn next to the issue of whether appellants have waived three claims they have raised on this appeal by their failure to raise them on their direct appeal.

On their direct appeal, the only issue appellants raised was whether the evidence was sufficient for the jury to convict appellants of second degree murder on a joint venture theory. Appellants failed to raise three claims that they could have raised on direct appeal; indeed, they did not raise these claims until they moved for a new trial on March 18, 1982—almost two years after their direct appeal had been decided adversely to them. The three claims involved: (1) whether appellants were convicted properly on a joint enterprise theory when they were indicted separately; (2) whether the trial court's charge to the jury, in which the jury was told that it could infer appellants' intent from their conduct and that it knew how the victim was brought to his death, violated appellants' constitutional rights; and (3) whether denying appellants' motions for a directed verdict while granting their codefendant's similar motion denied them equal protection of the law. Since appellants could have raised these claims, but failed to do so, they have waived the claims under *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In *Wainwright*, the Supreme Court held that when a defendant's failure to object to the admission of evidence at trial amounted to an independent and adequate state ground for upholding his conviction, the failure to object also barred federal habeas review of the admission of that evidence, unless, under *Davis v. United States*, 411 U.S. 233 (1973), the defendant could show cause for his failure to make a timely objection and that his failure resulted in prejudice to him. *Wainwright, supra*, 433 U.S. at 87. As we previously have held, a failure to object amounts to an adequate state ground if "1) the state in fact has a 'contemporaneous objection' rule; 2) the state enforces and does not waive the rule; and 3) the defendant fails to show both 'cause' for[,] and 'prejudice' from, not having complied with the rule." *McCown v. Callahan*, 726 F.2d 1, 3 (1st Cir.1984). In the instant case, we are satisfied that these three requirements have been met.

It is clear that Massachusetts has a contemporaneous objection rule. *McCown, supra*, 726 F.2d at 3. Since the Massachusetts Appeals Court held that the claims had been waived, it is equally clear that the Commonwealth has not waived the rule. Nor can appellants show both cause for and prejudice from their failure to comply with the rule. To demonstrate "cause", appellants would have had to show that an objective external factor, such as newly discovered facts, prevented their attorneys from objecting at trial, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), and to demonstrate "prejudice", appellants would have had to show that their failure to object "worked to their actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Appellants here have made neither showing. We are convinced that they could not do so. The only "cause" for their failure to object was the counsel's omission. Appellants would be hard pressed to show that "actual and substantial disadvantage" resulted from their failure to object and that the entire trial was infected with error of constitutional dimensions.

We hold that appellants waived their claims regarding the necessity for a joint indictment, the jury instructions and equal protection.

### IV.

Appellants have attempted to raise on the instant appeal two claims that the district court had ordered deleted from their habeas petition on the ground that appellants had not raised these claims in the state courts. The two claims involved:

(1) an alleged error by the trial court in instructing the jury on the joint venture theory, and (2) alleged ineffective assistance of state appellate counsel. Since appellants failed to exhaust their state remedies, we hold that the district court correctly dismissed these two claims.

A federal court may not grant a writ of habeas corpus "unless it appears that the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b) (1982); *see also Ex Parte Royall*, 117 U.S. 241, 251–53 (1886). This exhaustion requirement permits the state courts to correct any constitutional error before the federal habeas court addresses it. *Rose v. Lundy*, 455 U.S. 505, 515 (1982).

Appellants argue that they have raised similar claims in the state court. They assert that to require exhaustion of related claims now would be absurd. Specifically, they state that they previously raised the joint venture claim when they argued that the evidence was insufficient to support a joint venture theory and when they challenged the indictments on the ground that, since the prosecution was relying on a joint venture theory, it was improper to rely on separate indictments. They assert that requiring them now to exhaust the new claim regarding the jury instructions on joint venture would serve no purpose because the state court already has effectively rejected their claim.[1] We disagree. The two claims are analytically distinct from one another. While both claims are at least nominally concerned with the joint venture theory, the claims raised in the state courts involved the adequacy of the indictments and the sufficiency of the evidence, while the new claim involves the adequacy of the jury instructions.

With regard to their ineffectiveness of state appellate counsel claim, appellants argue that they could not have raised this claim earlier because they did not realize that counsel had been ineffective until the Appeals Court held that certain issues appellants raised in their motion for a new

trial had been waived. On the contrary, appellants could have raised the claim of counsel's ineffectiveness much earlier, as part of their motion for a new trial, because by that time appellants knew or should have known that their counsel had failed to raise the issues on their direct appeal.

We hold that the district court correctly held that appellants failed to exhaust state remedies with respect to claims regarding the trial court's instructions on the joint venture theory and the ineffectiveness of state appellate counsel.

## V.

■ This brings us to the claim of the alleged ineffectiveness of appellants' trial counsel. Appellants base their ineffectiveness claim on several alleged omissions by their trial counsel, including: (1) failure to investigate the possibility that others had a motive to kill McFarlane; (2) failure to seek a manslaughter charge; (3) failure to move for a directed verdict on the ground that the indictment charged appellants separately; and (4) failure to object to two parts of the jury instructions, regarding the propriety of inferring intent from conduct and whether the jurors knew how the victim met his death.

The test for ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, appellants must have shown that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice so great as to deprive them of a fair trial. *Id.* at 690. The question turns on whether, at the time of the conduct, counsel's conduct was reasonable. *Id.* It is inappropriate for an appellate court to succumb to "the distorting effects of hindsight" since "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id.* at 689. Indeed, the defendant

---

1. While appellants also assert that they did raise the jury instruction claim in their brief in the Massachusetts Appeals Court following denial of their motion for a new trial, our review of the pages to which appellants cite in their brief in our Court reveals only a point concerning an entirely different issue regarding jury instructions.

"must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

On the facts of this case, we conclude that counsel's performance was reasonable and not "deficient". Appellants therefore have failed to satisfy even the first prong of *Strickland.*

A reasonable attorney faced with the facts of this case would not have investigated the motives of other persons because the evidence indicated that no other persons were anywhere in the vicinity. Russo had seen only Casale and Federico during the entire morning of the incident. At the time of the shooting, her friends saw no one in the area except the five men in Casale's group.

Moreover, it would have been poor trial strategy for counsel to have done what appellants now say should have been done because to have done so would have diminished counsel's credibility.

The assertion that the indictment should have charged appellants separately is utterly without merit because the Massachusetts Rules of Criminal Procedure do not require joinder of defendants in one indictment. *See* Mass.R.Crim.P. 9(b) (1980).

Similarly, the assertion regarding counsel's failure to object to two parts of the jury instructions is extremely weak. Instructing the jury that it knew "how the victim was brought to his death" was a perfectly proper reference to the undisputed fact that McFarlane died from a gunshot wound. This instruction, to which appellants now say their counsel should have objected, was hardly likely to relieve the jury of its duty to find the cause of the victim's death. Counsel reasonably could have decided not to make such an objection. Counsel likewise reasonably could have decided not to object to the court's charging the jury that it could judge a person's intent from "what that person does" and could draw its "conclusions from that." Such an instruction was well within the permissible boundaries set by the relevant case law. *See, e.g., Commonwealth v.*

*Soares, supra,* 377 Mass. at 470, 387 N.E.2d at 507.

Finally, to have requested a manslaughter charge, in addition to diminishing counsel's credibility, would have undercut his theory that the evidence failed to establish that appellants had even participated in the crime. Thus, a reasonable attorney could well have decided that it was "sound trial strategy" not to request such a charge.

We hold that appellants were not denied effective assistance of counsel at their trial.

## VI.

To summarize:

We hold that the evidence at trial was sufficient to sustain a conviction of second degree murder on a theory of joint enterprise; that appellants waived their claims regarding the necessity for a joint indictment, the jury instructions and equal protection; that appellants failed to exhaust state remedies with respect to other claims—regarding the trial court's instructions on the joint venture theory and the ineffectiveness of state appellate counsel; and that appellants were not denied effective assistance of counsel at their trial.

Affirmed.