UNITED STATES of America, Appellee,

v.

Pedro SOTO–ALVAREZ, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Pedro SOTO–ALVAREZ, Defendant,
Appellant.

Nos. 90–1274, 90–1322.

United States Court of Appeals,
First Circuit.

Heard Oct. 7, 1991.

Decided March 4, 1992.

Rehearing and Rehearing En Banc
Denied April 16, 1992.

As Amended May 1, 1992.

Frank Inserni, Hato Rey, P.R., by appointment of the Court, for defendant, appellant.

Eumi L. Choi, Atty., Criminal Div., Narcotic and Dangerous Drug Section, Dept. of Justice, with whom Robert S. Mueller, III, Asst. Atty. Gen., Mary Lee Warren, Chief, Narcotic and Dangerous Drug Section, Margaret A. Grove, Acting Associate Chief of Policy, Narcotic and Dangerous Drug Section, Washington, D.C. and Daniel F. López–Romo, U.S. Atty., Hato Rey, P.R., were on brief for appellee.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

Pedro Soto–Alvarez was convicted on six charges of criminal conduct by a jury in the Federal District Court for the District of Puerto Rico. Defendant moved for a new trial on the grounds that he was denied the effective assistance of counsel, and exculpatory material before trial. Defendant also claimed that he was entitled to a new trial based on prosecutorial misconduct. Further, Soto–Alvarez appeals his conviction on double jeopardy grounds, and argues that the district court abused its discretion when it resentenced him on remand from this court. The district court denied defendant's motion for a new trial, as well as the two other claims made by defendant. Soto–Alvarez appeals the decision of the district court. We affirm.

## FACTS

On May 15, 1985, defendant was charged in a seven count indictment, which included: (1) conspiracy to possess with intent to distribute approximately 153.0 grams of cocaine; (2) possession with intent to distribute approximately 130.0 grams of cocaine; (3) distribution of approximately 130.0 grams of cocaine; (4) possession with intent to distribute approximately 153.0

* Of the Fifth Circuit, sitting by designation.

grams of cocaine; (5) distribution of approximately 153.0 grams of cocaine; (6) use of a communication facility to facilitate the possession with intent to distribute approximately 130.0 grams of cocaine; and (7) use of a communication facility to facilitate the possession with intent to distribute approximately 153.0 grams of cocaine, which acts were alleged to have occurred between September 20–27, 1984. On July 1, 1985, defendant pled guilty to counts one and seven of the indictment and the government agreed to dismiss the remaining five counts. Defendant was sentenced to eight years on the conspiracy charge and three years on the illegal use of a communications facility, both terms to run concurrently.

On August 7, 1986, defendant was charged in six of twelve counts in a second indictment. The charges there were: 1) conspiracy to possess with intent to distribute unspecified amounts of cocaine and heroin; 2) importation of approximately 2,500 grams of heroin; 3) importation of approximately 7,000 grams of cocaine; 4) possession with intent to distribute 2,500 grams of heroin; 5) possession with intent to distribute 7,000 grams of cocaine; and 6) travel in interstate commerce in furtherance of unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952. After a thirteen day jury trial, the defendant was convicted of all counts.

Defendant was sentenced to 15 years and a fine of $25,000 for count 1; 10 years and $15,000 for count 2; 10 years and $15,000 for count 3; 10 years and $10,000 for count 4; 10 years and $10,000 for count 5; and five years for count 6. The periods set in counts 2–5 were to run concurrently with each other but consecutive to the 15 year period in count 1. The five year period in count 6 was to run consecutively to the periods in counts 1–5. Also, special parole terms of five years were imposed on each of counts 2–5, to run concurrently with each other.

In *United States v. Soto–Alvarez*, 876 F.2d 209 (1st Cir.1989), *cert. denied*, 493 U.S. 1030, 110 S.Ct. 742, 107 L.Ed.2d 760 (1990), Soto–Alvarez' first appeal before this court, we reversed the conspiracy conviction on double jeopardy grounds, based on the fact that the defendant had been convicted of a conspiracy charge in the 1985 case which this court found to include the same conspiracy as the one charged in the second case. *Soto–Alvarez*, 876 F.2d at 229. The case was remanded for resentencing. On March 9, 1990, the district court resentenced defendant to 10 years and a $15,000 fine as to counts 2 and 3 to run consecutively with a special parole term of five years concurrent with each other; 10 years and $10,000 as to counts 3 and 4 each, to run consecutively to each other but concurrently to counts 2 and 3 with a special parole term of five years to run concurrently with each other; and five years as to count 6 to run consecutively to counts 2–5. The entire sentence was ordered to be served consecutively to the sentence being served in the 1985 case.

On March 15, 1990, defendant timely filed his notice of appeal. He claims that he is entitled to a new trial because he was not provided with certain exculpatory material prior to trial, and because the district court allowed inflammatory and egregious remarks by the prosecutor at closing argument. He also charges that he was denied effective assistance of counsel because he was not brought to Puerto Rico until a week prior to the start of his trial, and subsequently met with his attorney only three times, and then only briefly. Furthermore, appellant claims that the district court erred by not making findings or ordering the correction of the Presentence Investigation Report in compliance with Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure, and that the court was motivated by vindictiveness in resentencing him to an allegedly higher prison term than he originally received. Lastly, he contends that the conduct relied upon by the government to convict him in the present case was the same conduct the government relied upon to convict him in the first case, and therefore, the second conviction is barred by the double jeopardy clause as interpreted in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

## LEGAL ANALYSIS

### I. Motion for a New Trial

#### A. Exculpatory Evidence

Defendant contends that he was denied the right to a fair trial by not being provided with certain exculpatory *Brady* material[1] prior to trial. More specifically, he alleges that the government did not make available to the defense the passport of its star witness, José Panzardi. In overt act number three of count one of the indictment in this case, it is alleged that defendant and José Panzardi traveled to Venezuela to purchase cocaine and heroin. On April 28, 1986, Mr. Panzardi testified to the grand jury that he flew to Venezuela from Miami with defendant. But Mr. Panzardi's passport has no stamp for Venezuela. On April 20, 1987, on the last day of trial, the government told the court that it did not have the passport of Mr. Panzardi. However, it was subsequently revealed that the government did indeed have the witness' passport.

This is the second time Soto–Alvarez brings such an argument before this court. In his prior appeal defendant argued the government withheld his own passport until trial, but the passport was eventually introduced into evidence. Had this material been available to the defense earlier, defendant argued, "perhaps" the jury might have rendered a different verdict. *Soto–Alvarez*, 876 F.2d at 233. Defendant's argument failed to convince this court when first presented before us, and fails now as well.

■ As we stated in defendant's prior appeal, the rule of *Brady* only applies to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. *Soto–Alvarez*, 876 F.2d at 233; *see also United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Here, the passport was introduced as a trial exhibit by the defense, and *Brady* is therefore inapplicable. Moreover, defendant fails to show how the withholding of Mr. Panzardi's passport until trial prejudiced his defense. Instead, defendant limits his argument to a critique of his attorney's use of this evidence during trial. Unfortunately, the fact that defendant disagrees with his attorney's use of this evidence does not suffice to formulate a claim under *Brady*.

#### B. Prosecutorial Misconduct

■ Soto–Alvarez further argues that the prosecutor falsely stated during closing argument that both appellant's and Mr. Panzardi's passports showed stamps which proved that they traveled to Venezuela. Because no contemporaneous objection was made to this remark, we review it under the plain error standard. *United States v. Young*, 470 U.S. 1, 14–20, 105 S.Ct. 1038, 1045–49, 84 L.Ed.2d 1 (1985); *Soto–Alvarez*, 876 F.2d at 233; *see also United States v. Glantz*, 810 F.2d 316, 324 (1st Cir.), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). A review of Mr. Panzardi's passport shows no stamp for Venezuela. Nevertheless, we believe that the prosecutor's remark did not "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Soto–Alvarez*, 876 F.2d at 233; *Glantz*, 810 F.2d at 324. Mr. Panzardi's passport was introduced into evidence as a trial exhibit. Appellant had an opportunity during the trial to contest the claim that Mr. Panzardi and Mr. Soto–Alvarez had traveled together at the time in question. The failure on the part of defendant's attorney to take advantage of that opportunity does not serve to state a valid claim of prosecutorial misconduct.

Nevertheless, defendant claims that the guilty verdict against him before the district court is of questionable validity because it was the result of misleading information provided to the jury by the prosecutor. Furthermore, defendant submits that the government's failure to provide him with a copy of Mr. Panzardi's passport before trial prevented him from preparing an adequate defense concerning this issue which could have created a reasonable doubt in the jury's mind. We disagree. While Mr. Panzardi's passport was not

---

**1.** *See Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

stamped for Venezuela, Mr. Soto–Alvarez' was. Moreover, there is sufficient evidence to support a jury verdict of guilty without relying on the fact that he and Mr. Panzardi traveled to Venezuela together. Furthermore, the evidence of Mr. Panzardi and Mr. Soto–Alvarez traveling to Venezuela together really went to prove the conspiracy charge, which has already been reversed by this court. Therefore, we find the prosecutor's comments not so prejudicial as to undermine the fundamental fairness of appellant's trial. *Young,* 470 U.S. at 16, 105 S.Ct. at 1046.

### C. Effective Assistance of Counsel

Soto–Alvarez also argues that he was denied his right to effective assistance of counsel guaranteed by the Sixth Amendment, for two reasons: (1) insufficient time to consult with his attorney prior to trial; and (2) failure on the part of his attorney to properly cross-examine the government's star witness, José Panzardi. Defendant has already presented this issue on appeal before this court. Our opinion on this issue has not changed.

■ While it is true that a deprivation of effective legal assistance can result when defense counsel fails to perform with a reasonable degree of proficiency, we do not believe this to be the case here. *United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991) (citing *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984)). As we stated in Soto–Alvarez' prior appeal, the Supreme Court has established a two-part test to determine whether counsel's assistance was so ineffective as to require reversal of a defendant's conviction. First, the defendant must show that the deficient performance prejudiced the defense; and second, the defendant must prove that but for said deficient performance there is a reasonable probability that the result of the proceeding would have been different.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The Court has indicated that judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. at 2065. "[A] court must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

■ Nothing in the record persuades us to conclude that defendant's attorney provided him with anything other than reasonable professional assistance. Although Soto–Alvarez was brought back to Puerto Rico one week before trial, his attorney was appointed eight months prior to trial, and he had the opportunity to meet with his attorney three times before trial. Defendant sought a thirty day continuance to allow him to consult with his attorney and prepare for trial. The request was denied. Soto–Alvarez argues that this decision denied him the effective assistance of counsel. However, defendant has not explained how his attorney's performance was diminished by the trial court's denial of his motion for a continuance. Defendant's argument thus fails the first prong of the *Strickland* test since he does not show that his attorney's performance was actually deficient. Defendant adds, in this his second appeal, that this court failed to consider the length of each of the three meetings that defendant had with his attorney before trial. We considered this fact here, and remain unpersuaded that defendant was denied his right to effective assistance of counsel.[2] Though defendant's meetings with his counsel might have been short, he fails to establish how the short length of his meetings with his attorney before trial affected his attorney's actual performance during trial. Moreover, defendant does not argue, and there is no evidence to indicate that defendant could not have met with his attorney on more occasions if necessary. This argument, therefore, also fails to satisfy the first prong of the *Strickland* test.

**2.** The first meeting of appellant with his counsel was at the arraignment hearing, where appellant informed the magistrate that he was not satisfied with his attorney's services. In the second meeting, lasting approximately 10 to 15 minutes, his attorney went to propose to appel- lant to plead guilty. The third meeting was a 5 minute meeting on the Saturday prior to the Monday trial, when his attorney went to see another client and coincidentally was seen by Mr. Soto–Alvarez who told him that he was not interested in his case.

*Casale v. Fair*, 833 F.2d 386, 391 (1st Cir. 1987); *Therrien v. Vose*, 782 F.2d 1, 3 (1st Cir.), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 727 (1986).

■ The remaining argument in support of his claim of ineffective assistance of counsel—improper cross-examination—is a matter of trial strategy. When we first heard this argument we were unpersuaded that defendant's counsel acted unreasonably. We remain unpersuaded, and after careful consideration of defendant's argument in light of the record, we find that he has not overcome the presumption that his counsel acted reasonably. *See United States v. Moreno–Morales*, 815 F.2d 725, 751 (1st Cir.), *cert. denied*, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987) (failure to cross-examine is not an unreasonable trial tactic); *United States v. Talavera*, 668 F.2d 625, 632 (1st Cir.), *cert. denied*, 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982). Consequently, this claim also fails to satisfy the first part of the *Strickland* test. Based on the foregoing analysis, we reject defendant's claim that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment.

■ Relying on the arguments made above, Soto–Alvarez submits that the district court erred in denying his motion for a new trial in the interest of justice. However, the decision to grant or deny a new trial is committed to the sound discretion of the district court. The remedy is seldom used, and we will reverse the denial of a motion for a new trial only if it constitutes an abuse of discretion. *See, e.g., United States v. Dockray*, 943 F.2d 152, 157 (1st Cir.1991); *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970). In denying defendant's motion, the district court carefully considered each of the arguments made by the defendant. Since we agree with the district court's decision we cannot say that the denial of the motion for a new trial in any way constituted a miscarriage of justice. Thus, we hold that the district court did not abuse its discretion when it denied defendant's motion for a new trial.

## II. The Sentencing Hearing

### A. The Due Process Claim

After this court reversed the conspiracy conviction of Soto–Alvarez in his prior appeal, the district court resentenced appellant to 25 years and a fine of $50,000, the imprisonment to run consecutively to the imprisonment imposed in the 1985 case. In this resentence the terms of imprisonment of counts 2 and 3 are to run consecutive to each other, and the terms for counts 4 and 5 are to run consecutive to each other, but concurrent to the ones in counts 2 and 3. Defendant submits that the district court, in resentencing defendant, improperly increased his sentence after it was legally imposed and affirmed by the Court of Appeals.[3] According to defendant the court should have simply taken away the sentence for count one, which would have left defendant with a total sentence of 15 years. Instead the district court restructured the original sentence. Defendant argues that this action on the part of the court, coupled with the fact that the court did not allow the defendant to finish a statement before issuing his sentence, amounts to vindictiveness, and therefore, pursuant to the Due Process Clause of the Fifth Amendment, as interpreted in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *United States v. Pimienta–Redondo*, 874 F.2d 9 (1st Cir.), *cert. denied*, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989), the sentence imposed by the district court on remand from this court should be invalidated.[4]

---

**3.** The court had originally imposed a sentence of 30 years: Fifteen years for count 1; 10 years for count 2; 10 years for count 3; 10 years for count 4; 10 years for count 5; and five years for count 6. The terms for counts 2–5 were to run concurrent to one another, but consecutive to the 15 years for count 1. The five years for count 6 were to run consecutive to the prior terms.

**4.** In *Pearce*, the Court addressed the due process concerns which emerge when a defendant, having obtained reversal of a conviction on appeal,

This court firmly stated in *Pimienta–Redondo* that *Pearce* did not "prohibit resentencing, or even enhancement of sentence, after the accused has taken an appeal or otherwise taken advantage of some legal right." *Pimienta–Redondo*, 874 F.2d at 12 (citations omitted). Rather, the presumption envisioned in *Pearce* arises " 'only in cases in which a reasonable likelihood of vindictiveness exists.' " *Id.* at 12–13 (quoting *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982)). Merely resentencing a defendant without further proof of vindictiveness, or a reasonable likelihood thereof, will not give rise to the presumption. Thus, on resentencing, "if it is reasonably clear that the judge reshaped the impost merely as a means of bringing original sentencing intentions to fruition after some new development had intervened, a need for employing the *Pearce* presumption never arises." *Id.* at 13 (citations omitted). Indeed,

> common sense dictates that the judge should be free to review the efficacy of what remains in light of the original sentence, and to reconstruct the sentencing architecture upon remand ... if that appears necessary ... to ensure that the punishment still fits both the crime and the criminal.

*Id.* at 14.

In the present case we have found no evidence of actual, or even apparent, vindictive motivation on the part of the district court which would give rise to the *Pearce* presumption, much less serve as the grounds for a due process claim. Aside from the restructuring by the court of his sentence, defendant cites no other evidence in support of his claim, other than the fact that the district court judge did not allow him to finish a statement in court. We believe defendant has failed to present enough evidence to give rise to the *Pearce* presumption, or serve as legitimate grounds for a due process claim.

### B. Rule 32(c)(3)(D)

Defendant also asserts that the district court erred in not ordering corrections to the presentence investigation report in compliance with Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure. Rule 32(c)(3)(D) provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any *factual inaccuracy* in the presentence investigation report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

(Emphasis added). During his sentencing hearing, defendant alleged that the report erroneously employed the word "assault" to describe an incident involving the defendant in prison. The report stated:

> On April 24, 1989, Mr. Soto assaulted another inmate who incurred minor injuries in the head and chest. Disciplinary action was taken whereby 100 days of good time were forfeited. On June 13, 1989 he was given a disciplinary transfer to Memphis, Federal Correctional Institution where he is presently serving his sentence.

Defendant submits that the incident is better described as a "response to violent provocation at a prison brawl" because what actually happened was that he got into a fight with a man who insulted his mother who had recently passed away. Defendant also alleged that the report failed to make any reference to the decision by this court which reversed the conspiracy conviction in this case, while leaving in language pertaining to the conspiracy charge.

In the past this court has insisted on a literal compliance with Rule 32(c)(3)(D). *United States v. Hanono–Surujun*, 914 F.2d 15, 17 (1st Cir.1990); *Unit-*

is subsequently retried for, and found guilty of the same offense and given a stiffer sentence by the same trial judge.

ed States v. Jiménez–Rivera, 842 F.2d 545, 551 (1st Cir.1988), cert. denied, 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 917 (1988). In United States v. Lyons, 898 F.2d 210 (1st Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990), we remanded a case because of the failure of the district court to make a finding as to the allegations of the defendant. In that case the defendant denied a fact stated in the presentence investigation report. However, our reading of Rule 32(c)(3)(D) does not render this rule applicable in this case. The rule directs the court to make a finding as to any "factual inaccuracy" in the presentence investigation report. Defendant here has not cited a factual inaccuracy. In fact, defendant does not deny the occurrence which is the subject of his first allegation, but merely the characterization of said occurrence as an assault. While we have stated in the past that subtle distortions resulting from incompleteness can be as prejudicial to a defendant as patently inaccurate facts, we find no such distortion here. Jiménez–Rivera, 842 F.2d at 551. Mr. Soto–Alvarez did indeed assault another inmate which caused him to be transferred to another correctional institution. Thus, we find that the district court did not err in denying Mr. Soto–Alvarez' first objection.

Defendant's second objection carries even less weight. In his second objection, Soto–Alvarez cites no factual inaccuracy, but merely objects to the report's lack of mention of this court's reversal of his conviction on the charge of conspiracy. Rule 32(c)(3)(D) does not call for the inclusion of every fact pertaining to the criminal record of a defendant. Furthermore, the district court was well aware of the reversal by this court, for that is the reason why they were holding a second sentencing hearing to begin with. And the report did not contain an inaccuracy as to the facts because the defendant had indeed engaged in said conduct. A district court is entitled to consider all evidence presented at trial as a factor in its sentencing decision. Hanono–Surujun, 914 F.2d at 19 (citing United States v. Fuentes–Moreno, 895 F.2d 24, 26 (1st Cir.1990)). Thus, we find that the district court did not err in denying defendant's second objection to the sentencing report.

### III. The Double Jeopardy Clause

Defendant alleges that the government was barred from prosecuting him under the second indictment in light of the "same conduct" test established by the Supreme Court in Grady v. Corbin, supra, and followed by this court in United States v. Ortiz–Alarcón, 917 F.2d 651 (1st Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 2035, 114 L.Ed.2d 120 (1991).[5] That indictment resulted in his conviction on the substantive counts of importation and possession of cocaine and heroin with intent to distribute and violation of the Travel Act.

To determine whether a subsequent prosecution is barred by the Double Jeopardy Clause, a court must first apply the traditional Blockburger test.[6] Grady, 110 S.Ct. at 2090. If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the double jeopardy inquiry must cease, and the subsequent prosecution is barred. Id. (citing Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)). However, a subsequent prosecution must do more than merely survive the Blockburger test. Grady, 110 S.Ct. at 2093. Grady dictates that the Double Jeopardy Clause also bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct which constitutes an offense for which the defendant has already been prosecuted. Id. The critical inquiry under Grady is what conduct the government will prove, and not what evidence the government will use to prove that conduct. Id. Moreover, the presentation of specific evidence in one trial does not forever prevent the government from

---

**5.** The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

**6.** See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

introducing that same evidence in a subsequent proceeding. *Id.* (citing *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). However, the government cannot avoid the dictates of the Double Jeopardy Clause merely by altering the evidence in successive prosecutions to prove the same conduct. *Id.*

 Soto–Alvarez submits that the "same conduct" test enunciated in *Grady* bars prosecution of the substantive counts charged in this case—1) importation of 2500 grams of heroin; 2) importation of 7000 grams of cocaine; 3) possession with intent to distribute approximately 2500 grams of heroin; 4) possession with intent to distribute approximately 7000 grams of cocaine; and 5) travel in interstate commerce and foreign commerce with intent to promote unlawful activity. According to *Grady* then, we must determine whether to prove an essential element of any of the above listed offenses, the government proved conduct which constituted an offense for which Soto–Alvarez had already been convicted—essentially 1) conspiracy to possess with intent to distribute 153 grams of cocaine; and 2) use of a telecommunications facility with intent to distribute 153 grams of cocaine.[7] If conduct to which the defendant pled guilty pursuant to the 1985 indictment was introduced into evidence in the trial held pursuant to the 1986 indictment, and said conduct served to prove an essential element of an offense charged in the 1986 indictment, then under *Grady*'s "same conduct" test, the defendant would have twice been put in jeopardy as to that offense.

We turn then to the conduct charged in the 1985 indictment. It cited a number of overt acts in support of the conspiracy count against the defendant, specifically that:

4. On or about September 27, 1984 Pedro Soto Alvarez, aka "Jr. Soto," met with the undercover agents at the Tropimar in Isla Verde to discuss a cocaine transaction. A purchase of ⅛ kilogram of cocaine was agreed upon.

5. On or about September 27, 1984 Pedro Soto Alvarez, aka "Jr. Soto," telephoned Hector Rafael Nevarez Tubens, aka "Pucho" from the Tropimar Bar Restaurant and arranged the delivery of the cocaine by Hector Rafael Nevarez Tubens, aka "Pucho".

A close review of the record, and the evidence introduced at trial in this case reveals that no part of the conduct charged above, and to which the defendant pled guilty—conspiring to sell ⅛ of a kilogram of cocaine to an undercover agent and using a telephone with intent to distribute that cocaine—was introduced to prove any of the offenses in the second indictment. Rather, in the second trial, the evidence related to different criminal conduct. There, the same undercover agent gave testimony regarding a conversation he had with Soto–Alvarez, at the same meeting, but not in reference to a sale of cocaine. Instead, the undercover agent stated that Soto–Alvarez had spoken to him about a trip he had undertaken in Venezuela and Colombia, and about certain drugs he had imported into Puerto Rico. Tr. Vol. X at 141–44. Thus, the conduct proved in the second trial through the testimony of the undercover agent—traveling in foreign commerce with intent to violate laws, and importation of narcotics into Puerto Rico—constitutes different conduct than that charged in the first indictment.

The fact that the undercover agent testified as to a conversation he had with the defendant during the same meeting mentioned in the first indictment is nonconsequential because in both instances the meeting was introduced to prove something other than that fact that Soto–Alvarez met with the undercover agent. In the first indictment the purpose was to prove that Soto–Alvarez arranged to deliver ⅛ of cocaine to the agent. And in the second

---

**7.** The 1985 indictment charged the defendant with seven separate offenses, however we only concern ourselves with the two charges to which the defendant pled guilty since jeopardy ordinarily does not attach to counts which are dismissed and on which no finding of guilty is made. *See United States v. Garcia–Rosa,* 876 F.2d 209, 235 & n. 21 (1st Cir.1989), and cases cited therein.

proceeding the purpose was to prove that Soto–Alvarez had imported cocaine into Puerto Rico, and traveled in foreign commerce with intent to violate the law.

Moreover, the fact that the "153 grams" involved in the acts charged in the first indictment were part of the "7000 grams" involved in the acts charged in the second indictment is immaterial, since our analysis under *Grady* focuses on the "conduct" the government proved in the second proceeding, and not on the particular evidence introduced to prove that conduct. Thus, we find that the government, in the trial pursuant to the second indictment, did not prove conduct which constituted an offense for which the defendant had already been prosecuted.

The decision of the district court is *affirmed*.