USCA1 Opinion

 

 February 10, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 94-1366 UNITED STATES, Appellee, v. JUAN BRACHE, Defendant, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ___________________ Before Torruella, Chief Judge, ___________ Cyr and Stahl, Circuit Judges. ______________ ___________________ Francis X. Mackey on brief for appellant. _________________ Sheldon Whitehouse, United States Attorney, and Zechariah ___________________ _________ Chafee, Assistant United States Attorney, on brief for appellee.  ______ __________________ __________________ Per Curiam. Juan Brache appeals from his convictions __________ for possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, see 18 U.S.C. 922(g)(1); possession of cocaine with ___ intent to distribute it, see 21 U.S.C. 841(a)(1); and use ___ of a firearm during a federal drug trafficking crime, see 18 ___ U.S.C. 924(c)(1). We affirm. I. On several occasions in April 1993, narcotics detectives from the Providence Police Department drove by a house located at 154 Stanwood Street, and observed Brache, known to them as "CUBA," seated by the second-story, front window. On April 28, 1993, a team of five detectives made an entry into the house. Detective Drohan proceeded first. He entered the basement from the back of the house and positioned himself there by the base of a chimney. The rest of the team arrived in unmarked police cars, approached the house from the front, entered a side door, walked up the stairs to the second-floor apartment, and entered the kitchen. As Detective Drohan heard the other detectives walk up the stairs, he observed a Monarch cigarette pack and a pistol fall to the floor at the base of the chimney. The cigarette pack contained numerous small bags of cocaine. The pistol was loaded. Detective Gannon, who entered the kitchen first, testified that he saw two people there, an "older" male and a "heavy set" female. He immediately looked to the left and saw Brache approaching the kitchen from the living room. -2- Shortly after grabbing Brache and placing him in the kitchen, Detective Gannon heard Detective Drohan radio that he had found "something." Detective Gannon went into the living room where he saw a space heater with a pipe that entered the wall. He slid the pipe aside and dropped an ashtray down a vent in the wall. The ashtray landed in the same place that the cigarette pack and pistol had landed. According to Detective Gannon, there was no one else in the living room. Shortly after the experiment with the ashtray, Detective Drohan came up to the second-floor apartment. He recognized the "heavy set" female in the kitchen as Dawn LaCroix, a prostitute. The "older" man in the kitchen was intoxicated. Detective Drohan recognized him as someone he had seen before, "hanging" in front of the liquor store on Elmwood Avenue. Detective Drohan noticed that Brache was smoking Monarch cigarettes and seized several empty packs from the living room. While the detectives were present, a number of customers knocked on the second-floor door, asked for "CUBA," and requested one or two bags of cocaine. There was no fingerprint evidence linking Brache to either the pistol or cigarette packs. The parties stipulated that Brache had a prior conviction for a crime punishable by imprisonment for a term exceeding one year. They also stipulated that if the government proved beyond a reasonable doubt that Brache possessed cocaine on April 28, 1993, then -3- Brache did so knowingly and intentionally, and with the intent to distribute it. The defense strategy was to raise a doubt about whether the defendant was the only person who could have dropped the cocaine and pistol down the vent. Towards this end, the defense called Detective Soto, who had also participated in the raid, as a witness. Based on Detective Soto's testimony, the jury could have found that there were up to six or seven persons in the apartment when the narcotics team entered it, including several Hispanic males. Richard Slowe, a private investigator hired by the defense, testified that the house at 154 Stanwood Street has three floors. He also testified that when he visited the site, someone appeared to be living on the third floor. II. Brache raises two issues on appeal. First, he argues that the district court erred in refusing to allow him to ask a prospective juror on voir dire whether the juror felt that police officers might ever stretch the truth.1 Second, he argues that the government's failure to disclose, until the first day of trial, the presence of the elderly drunken man  ____________________ 1. The question defense counsel posed to the prospective juror was: "Do you think that when police officers arrest somebody sometimes, and they write out their reports and they come to testify in court. Do you think they would ever stretch the truth?" The government objected to the question, and the district court sustained the objection. -4- in the second-floor apartment, violated his right to the production of exculpatory evidence under Brady v. Maryland, _____ ________ 373 U.S. 83 (1963). Under the circumstances, Brache argues, the district court erred in denying his motion for a mistrial or for a continuance. We find no error. Where law enforcement officers are key witnesses, the trial court must permit inquiry into whether prospective jurors would give greater credence to the testimony of a government agent. United States v. Anagnos, 853 F.2d 1, 3-4 _____________ _______ (1st Cir. 1988); United States v. Pappas, 639 F.2d 1, 4-5 _____________ ______ (1st Cir. 1980), cert. denied, 451 U.S. 913 (1981). However, ____________ the phrasing of the inquiry is up to the judge. United ______ States v. Victoria-Peguero, 920 F.2d 77, 84 (1st Cir. 1990), ______ ________________ cert. denied, 500 U.S. 932 (1991). In the instant case, the ____________ district court permitted the attorneys to ask the questions on voir dire. Defense counsel took advantage of the opportunity by asking prospective jurors questions about their experiences with police officers. Although the district court did not permit defense counsel to ask a prospective juror whether he thought police officers would ever stretch the truth, the court informed defense counsel that he could ask jurors "whether they're more likely to believe a police officer simply because he's a police officer, as opposed to a lay person." Defense counsel responded by pursuing a different line of inquiry. Under the -5- circumstances, Brache cannot complain that he was precluded from asking questions designed to weed out jurors with pro- government bias. We also find no Brady violation. Brady and its progeny _____ _____ prohibit the government from suppressing exculpatory evidence which is "material either to guilt or to punishment." Brady, _____ 373 U.S. at 87. However, suppression can occur only when the government withholds information unknown to the defendant. See Giles v. Maryland, 386 U.S. 66, 96 (1967) (White, J., ___ _____ ________ concurring) (observing that "any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense"); United ______ States v. Dupuy, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985); see ______ _____ ___ also United States v. Soto-Alvarez, 958 F.2d 473, 477 (1st ____ ______________ ____________ Cir.) (Brady rule applies only to information which had been _____ known to the prosecution but unknown to the defendant), cert. _____ denied, 113 S. Ct. 221 (1992). In the instant case, the ______ evidence reveals that Brache must have been aware of the "older" gentleman's presence in the apartment at the time of the raid. Accordingly, the government cannot be said to have suppressed this information. Moreover, even if we were to accept Brache's suggestion, made below, that the government knew more than he did because it knew who the elderly gentleman was, if not his name, we would reject his Brady claim. The government was not _____ -6- required under Brady to turn over all relevant information; _____ it was only required to produce exculpatory evidence that, if suppressed, would deprive the defendant of a fair trial. See ___ United States v. Bagley, 473 U.S. 667, 675 & n.6 (1985). ______________ ______ There is no evidence in the record that the government interviewed the elderly gentleman, and Brache presents no reason to believe that his testimony would prove favorable. Under the circumstances, we cannot say that the government withheld exculpatory evidence in violation of Brady. See _____ ___ United States v. Polowichak, 783 F.2d 410, 414 (4th Cir. ______________ __________ 1986). We add that the district court offered, on the first day of trial, to recess the case if Brache wanted additional time to look for witnesses. Although defense counsel did move for a continuance the next day, he made the request contingent upon the court also agreeing to release Brache to assist in the search. The district court was unwilling to release Brache and denied the combined motion for a continuance and temporary release. Brache makes no argument on appeal that he should have been released. Having indicated below that he was not interested in a continuance, unless he were also released, Brache cannot now complain that he was not granted one. Affirmed. See Loc. R. 27.1. ________ ___ -7-